# UNITED STATES *v.* NORTHERN PACIFIC RAIL-WAY COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 44. Argued October 27, 1916.—Decided December 4, 1916.

A railroad company which, being required by order of the Interstate Commerce Commission to report all instances in which its employees have been kept on duty longer than the period provided by the Hours of Service Act, 34 Stat. 1415, omits from its report as filed certain instances of excessive service, under the honest but mistaken belief that they did not come within that act, is not liable to the penalties prescribed by § 20 of the Act to Regulate Commerce, as amended June 18, 1910, 36 Stat. 539, 556, where it appears that the mistake was not only honest but was made in a genuinely doubtful case.

Section 20 in its penal features should be applied only to cases coming plainly within its terms. *Semble,* that the only sanction securing the correctness of such reports is the penalty for the perjury committed when the oath under which they are made is violated.

In construing a penal provision, the court will be slow to attribute to Congress an intention to exact punishment which the Government itself has conceded would be greatly disproportionate to the offence.

Statutes should be construed, if possible, so that their requirements shall be apparent in their own terms rather than dependent upon the discretion of executive officers.

213 Fed. Rep. 162, affirmed.

THIS is a civil proceeding brought by the United States in the United States District Court for the District of North Dakota, to recover $500 from the Northern Pacific Railway Company for the claimed failure to file, for five successive days, with the Interstate Commerce Commission, a report of violations of the Hours of Service Act, as required by an order of the Commission issued June 28, 1911. The order was made under authority of § 20 of the Act to Regulate Commerce, as amended June 18th,

1910, 36 Stat. 539, 556, and has the force of statute law. It requires the carrier to report "under oath" within thirty days after the end of each month, all instances where employees have been on duty for a longer period than that provided in said act, which in this case was sixteen hours.

The District Court rendered judgment for the Government, which was reversed by the Circuit Court of Appeals for the Eighth Circuit (213 Fed. Rep. 162). The case is here for decision on writ of certiorari.

The judgment of the District Court was rendered on the pleadings, the admitted facts of the case being as follows:

Five employees of the defendant were called to take charge of a wrecking train at 8.10 o'clock p. m. October 29, 1911, but, before they reported at the place of duty, it was ascertained that such train would not be needed and when they arrived they were notified that their services would not then be required, but that they should report for duty at 10.35 o'clock p. m. the same evening. From 8.10 to 10.35 o'clock they did not render any service "save that they kept alive the fire in the engine during said period." At 10.35 o'clock the five men entered upon a freight train run, which, because of hot boxes, was delayed so that it did not arrive at destination until 1.15 o'clock p. m. the next day.

If the service of the men were considered as beginning at 8.10 o'clock, the hour for which they were called, they were on duty for 17 hours and 5 minutes, but if the time were reckoned from 10.35 p. m., when the men actually took charge of the freight train, they were on duty less than sixteen hours. It is admitted that the officials of the railway company believed in good faith that the time of the men should be reckoned from 10.35 p. m., and not from 8.10 p. m., and that, for that reason, when next after October 30th, 1911, they filed their report of employees

subject to the act who had been kept on duty for a longer period than sixteen hours, the names of the members of this crew were omitted, although the names of many other employees who had been kept on duty longer than the statutory limit were stated in that report.

It was conceded at the hearing in the Circuit Court of Appeals that the United States had sued the company for the "forfeitures" prescribed for these excessive services under discussion in this case, and had secured a judgment which had been paid, and that thereby it was determined, for the purposes of this suit, that these employees were on duty from 8.10 o'clock p. m., and therefore for more than sixteen hours.

The Government's claim in the case is for the omission for five days to file the report and it prays judgment for "forfeitures" aggregating $500, although when the complaint was filed the report claimed to be defective had been on file from November 30th, 1911, to September 14th, 1912, and if the "forfeitures" of $100 per day prescribed by the law for each day of failure to file a proper report were allowed, the amount of recovery by the Government would be $28,900, and it is only by grace of the public officials that the claim in the suit was not for this amount instead of for $500.

*Mr. Assistant Attorney General Underwood* for the United States.

*Mr. Emerson Hadley*, with whom *Mr. Charles W. Bunn* was on the brief, for respondent.

MR. JUSTICE CLARKE, after making the foregoing statement, delivered the opinion of the court.

It will be seen from the foregoing statement of facts that the question presented by the record in this case for decision is: Assuming that the law required that in the

report of the company filed on November 30th, 1911, the names of these five employees of the defendant should have been included as having been on duty for more than sixteen hours, and that their names were omitted from that report because it was in good faith believed that their hours of service should be computed from 10.35 o'clock p. m., and that, therefore, they had not been on duty in excess of sixteen hours, is the company liable for the "forfeitures" prescribed by the statute, judgment for which was prayed for in the complaint?

Section 20 of the Act to Regulate Commerce of February 4, 1887, as amended June 18, 1910, 36 Stat. 556, requires the filing of elaborate annual reports by carriers and also the filing of such special reports as the Commission may, by general or special order, require. On the twenty-eighth day of June, 1911, the Commission ordered that all carriers subject to the provisions of the act should report "under oath" within thirty days after the end of each month all instances of employees who had been on duty for a longer time than that required by the act. It is for violation of this order, which has the effect of statute law, that this suit was instituted, it being admitted by the Government that the failure to mention these five men in the report by the defendant, filed at the proper time, and which contained a report of many men kept on duty for a period longer than the time allowed by law, was due to the fact that it in good faith believed that these men commenced their time of service at 10.35 instead of at 8.10 o'clock, and that therefore they were not on duty more than the sixteen hours prescribed by the statute. The defendant in error contends that judgment is asked for an omission caused by an honest mistake with respect to a genuinely doubtful case in a report which was properly filed and this, it is claimed, is not a violation of the law. The statute is a penal one and should be applied only to cases coming plainly within its terms. *Steam*

*Engine Co.* v. *Hubbard,* 101 U. S. 188. While the reports filed must be truthful reports (*Yates* v. *Jones National Bank,* 206 U. S. 158), yet, since they must be made under oath, the penalties for perjury would seem to be the direct and sufficient sanction relied upon by the law-making power to secure their correctness.

We are confirmed in this conclusion by the fact that the annual report required of carriers by this same § 20 of the act calls for so great an amount of detailed information that it would be difficult, if not impossible, for any one to prepare such a report without making some unintentional omission or mistake, and we cannot bring ourselves to think that Congress intended to punish such an innocent mistake or omission with a penalty of $100 a day.

There are, to be sure, many statutes which punish violations of their requirements regardless of the intent of the persons violating them, but innocent mistakes, made in reporting facts, where the circumstances are such that candid minded men may well differ in their conclusions with respect to them, should not be punished by exacting penalties, except where the express letter of the statute so requires, and we conclude that the section under discussion contains no such requirement. In reports in which a mistake is much more likely to prove harmful than in such a report as we have here, the national banking laws punish mistakes only where "knowingly" made.

It is argued that if good faith will excuse an omission or a mistaken statement in this report, it will be widely taken advantage of as a cover for making false and fraudulent statements in such reports in the future. Such a prospect seems quite groundless, since many, if not most, criminal laws imposing penalties are made applicable only in cases where corrupt intent or purpose is established to the satisfaction of a court or jury, yet such requirement has not been found in practice to be an encouragement to wrongdoing.

The fact that the Government sues for only one fifty-seventh part of the forfeitures which had accrued under the construction of the rule and statute contended for by it, should make us slow to attribute to Congress a purpose to exact what is thus admitted to be a punishment greatly disproportionate to the offense. Statutes should be construed, as far as possible, so that those subject to their control may, by reference to their terms, ascertain the measure of their duty and obligation, rather than that such measure should be dependent upon the discretion of executive officers, to the end that ours may continue to be a Government of written laws rather than one of official grace.

It being very clear that it is not the purpose of the law under discussion to punish honest mistakes, made in a genuinely doubtful case, the decision of the Circuit Court of Appeals is

*Affirmed.*