**THE PENZA (two cases).**

(Circuit Court of Appeals, Second Circuit. November 16, 1925.)

Nos. 71, 72.

1. **Statutes** ⬅⮞212—**Statutes assumed passed in light of pre-existing law.**

Statutes are assumed to be passed in light of and with reference to pre-existing law.

2. **Shipping** ⬅⮞39, 62—**Time charter held not demise of vessel making captain master of charterer.**

Time charter, by which owners remained liable for wages and provisions, and charterer agreed to provide bunker coal and passenger expenses, captain being under orders of charterer, *held* not a demise, and hence captain was owners' master, and not charterer's.

3. **Maritime liens** ⬅⮞28—**One furnishing supplies to foreign vessel under charter party on orders of master held entitled to lien therefor.**

One who, on orders of master of foreign vessel, under charter party not constituting a demise furnished necessary supplies, *held* entitled to a lien, under Merchant Marine Act June 5, 1920, § 30, subsecs. P–R (Ship Mortgage Act), being Comp. St. Ann. Supp. 1923, §§ 8146¼ooo–8146pp), identical with Maritime Lien Act June 23, 1910, § 1 (Comp. St. § 7783); master not being prohibited by charter.

Appeals from the District Court of the United States for the Southern District of New York.

Separate libels by the Panama Railroad Company against the steamship Penza, her engines, etc., claimed by Ivan V. Shestacovsky. From a decree dismissing both libels, libelant appeals. Reversed and remanded.

The Penza belonged to a Russian corporation, and was, in March, 1921, under time charter to a firm of merchants at Hong Kong. The charterers used her in part at least for the transport of some hundreds of Chinese laborers to Cuba. With these passengers on board, the steamer reached the Panama Canal Zone. She was then without enough coal to reach Cuba, and without provisions sufficient for the Chinese passengers.

Under the charter party it was the duty of the charterers to provide both bunkers and provisions, and they wholly failed so to do. The charter party was a very ordinary form, and not a demise of the ship. Owners remained specifically liable for wages and provisions of captain and crew, and charterers agreed to provide and pay for bunker coal and passenger expenses, including food. The usual clause is found that, "although appointed by the owners, the captain shall be under the order and direction of the charterers as regards employment, agency, or other arrangement," but there is no expressed prohibition or attempted diminution of the master's power of procuring necessaries on the credit of his ship.

We find as facts that in March, 1921, and in the Canal Zone, the Penza was in great and instant need of coal and provisions, the latter mostly required for the Chinese passengers, who were almost starving and therefore mutinous. Thereupon the ship's master applied to agents of libelant for the coal and supplies mentioned in the libels herein, and they were supplied on his order. The bills for the provisions which are the subject of suit in libel No. 2 the master personally signed; the others he did not.

Not all the goods claimed for were furnished by the same agents of libelant, but the more important of such agents knew that Penza was under charter, and that her master complained much of the charterers for not furnishing the coals, etc., as agreed; but none of said agents demanded an examination of the charter party.

These facts appearing, the lower court dismissed both libels, whereupon these appeals were taken.

Richard Reid Rogers, of New York City, for appellant.

Charles Recht, of New York City, for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). All parties have assumed, and we shall therefore assume, that this is the case of a foreign vessel procuring necessaries in a port of the United States; wherefore the maritime law of this country as expressed in statutes or handed down by tradition applies as fully as though Penza had gotten what she wanted in New York harbor.

The vital point of our fact findings is that everything bought and for which these libels were filed was gotten upon the direct order of Penza's captain. That he signed the bills covering the supplies mentioned in the second libel is merely the customary evidence furnished by masters; but the oral evidence satisfies us that the master ordered all the goods, and that libelant furnished them, relying upon the credit of the ship and supposing that it was given the security of the ship.

The statute law applicable is section 30, subsection P et seq., of the Merchant Marine Act 1920 (Ship Mortgage Act, 41 Stat. p. 1005 [Comp. St. Ann. Supp. 1923, § 8146¼ooo, et seq.]), which for the purposes of this case is identical with section 1 of the Maritime Lien Act of 1910 (36 Stat. 604 [Comp. St. § 7783]).

[1] It is always assumed that statutes are passed in the light of, and with reference to preexisting law, and there can be no doubt that before 1910, one who upon the order or request of the master and in a foreign port furnished supplies or made advances to and on the credit of such master's ship, enjoyed a rebuttable presumption of possessing a maritime lien for the price or amount of such supplies, etc. So held in this circuit by Woodruff, J., in The Acme, 7 Blatch. 366, Fed. Cas. No. 28; and for other citations see 7 Comp. Stat. 1916, p. 8232. The statute (subsection Q [Comp. St. Ann. Supp. 1923, § 8146¼p]) more than confirmed this view of the law by declaring that the master of a vessel "shall be presumed to have authority from the owner to procure * * * supplies * * * and other necessaries for the vessel," and subsection P expressly confers for supplies so procured a maritime lien.

Subsection R. (Comp. St. Ann. Supp. 1923, § 8164¼pp) may (for argument's sake only) be taken to mean a master, though not appointed "by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel," can create no lien when "the furnisher knew or by exercise of reasonable diligence could have ascertained" that the master "ordering the * * * supplies, * * * was without authority to bind the vessel therefor." We do not hold that subsection R covers or was intended to cover the acts of a master appointed by the owner, and not handed over to the charterer as owner pro hac vice, but appellee can ask no more than the foregoing assumption.

[2] The Penza was under charter, but there was no demise of the vessel and no ownership pro hac vice. The terms of charter did not materially vary from those set forth in Clyde, etc., Co. v. West India Co., 169 F. 275, 94 C. C. A. 551, where we held a time charter such as the one at bar to be no demise. It follows that the master of the Penza was in the well-known phrase the owner's master, and not the charterer's master.

But by the terms of the charter party there was no express prohibition upon the master to obtain necessaries, and coal and food certainly come within that category, upon the credit of the vessel. It is quite true that the owners hoped it would not be necessary for the master to go to such lengths to get what he had to have, and they did contract with the charterers to provide the same, but there was no prohibition on the power of the master, which existed before the statute and was recognized and indeed enlarged by the statute.

It follows that the failure of libelant to examine the charter party is immaterial; for if that document had been read, its terms would have left the power of the master unaffected. That no one wished to order coals and food less than the master, that he did what he did only in the pinch of necessity is no benefit to claimant appellee.

[3] Thus it is seen that this master had the right to do what he did by traditional law and by statute, and was not prohibited from action by charter. Such a situation is plainly far within The South Coast, 251 U. S. 519, 40 S. Ct. 233, 64 L. Ed. 386, the facts in which case are best set forth in 247 F. 84, and those facts are totally different from those presented in United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361, where the ship was in the possession of purchasers on a partial payment agreement, who

appointed the master, who ordered nothing, and both "the partial payment owner" and its master were expressly prohibited by the purchase contract from hypothecating the vessel for what the master in that case did not order, and what the Penza's captain did of necessity procure.

We find no similarity between this and the Carver Case; and the South Coast only shows a set of circumstances far more difficult for the lienor than is here presented.

Decrees reversed, with costs, and cases remanded with order to assess libelant's damages, also with costs.