## UNITED STATES v. J. H. WINCHESTER & CO., Inc.

### No. 255.

Circuit Court of Appeals, Second Circuit.

April 7, 1930.

L. HAND, Circuit Judge, dissenting.

Charles H. Tuttle, U. S. Atty., of New York City (Mary R. Towle, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Haight, Smith, Griffin & Deming, of New York City (E. R. Kraetzer, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and MACK, Circuit Judges.

SWAN, Circuit Judge.

This action was brought to recover penalties under section 20 of the Immigration Act of 1924 (8 USCA § 167) for failure to detain on board the Norwegian steamship Erle two alien seamen, after the master had been required by an immigration officer to detain them. A written demand to detain them was served on the master after inspection of the crew at the quarantine anchorage on a Saturday afternoon. The defendant, local agent of the vessel's foreign owner, had no knowledge of it until the following Monday, and in the meantime the aliens had deserted and escaped at Edgewater, N. J., whither the vessel had proceeded from quarantine. Subsequently, and after the vessel had been allowed to clear with knowledge by the immigration officials of the seamen's desertion, a demand was made upon defendant for the payment of $2,000 penalty. The appeal presents a single question of narrow compass, namely, whether the notice to the master constitutes a sufficient notice to the defendant to impose liability upon it.

The relevant portions of the section are as follows:

"Sec. 20. (a) The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman (which inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs.

"(b) Proof that an alien seaman did not appear upon the outgoing manifest of the vessel on which he arrived in the United States from any place outside thereof, or that he was reported by the master of such vessel as a deserter, shall be prima facie evidence of a failure to detain or deport after requirement by the immigration officer or the Secretary of Labor."

This section finds its origin in section 32 of the Act of February 5, 1917 (39 Stat. 895), which it expressly repealed. Section

32 imposed liability only for the "negligent failure" to detain or deport, and made "notice in writing by the immigration officer" a condition precedent to liability for the penalty. Sinclair Nav. Co. v. United States, 32 F.(2d) 90 (C. C. A. 5); The Kathlambra, 18 F.(2d) 113 (D. C. E. D. N. Y.); The E. W. Sinclair, 1 F.(2d) 453 (D. C. S. D. Fla.). Although the provision for a written notice is not expressly contained in section 20 of the Immigration Act of 1924 (8 USCA § 167), the practice of the immigration officials has been to continue to use under the later act the same form of notice as was used under the earlier; and it seems clear that the nature of the situation, as well as the phrase, "if required by such immigration officer," necessitates some form of demand upon the owner, charterer, agent, consignee, or master before any of the persons named becomes liable for failure to detain the particular alien seaman whom the immigration officer has selected for detention. The matter left ambiguous is upon whom the demand must be made to impose liability on others than the person notified.

It is not argued that notice to any one of the named classes of persons would suffice to bind all the others. The government asks only that the statute be construed to permit notice to the master to bind all. Indeed, its contention is even narrower, for it urges the desired construction merely in respect to foreign owned vessels. But the statute makes no distinction between foreign owned and domestic vessels, so that whatever construction is adopted must apply to both alike. The appellee contends, on the other hand, that notice must be given to the person to be held, or to his authorized agent. Concededly, the master is under ordinary circumstances the agent of the owner only. See American Asiatic Co. v. Robert Dollar Co., 282 F. 743, 749 (C. C. A. 9); The Penza, 9 F.(2d) 527 (C. C. A. 2); cf. Suzuki v. Nat. Surety Co., 290 F. 942 (C. C. A. 2).

An examination of the congressional history of section 20 of the Immigration Act of 1924 (8 USCA § 167) throws no light on the precise question. It does show that section 32 of the 1917 act had been found inadequate to prevent the unlawful entry of aliens posing as seamen and jumping ship upon arrival in this country, and that section 20 was intended to provide more effective means to combat this evil. Its provisions are much more stringent than those of the earlier act. The first clause of section 20 was new; it imposed an absolute duty upon each of the persons named to keep alien seamen on board until the immigration officer has inspected the crew. The second clause eliminated the element of "negligence" in penalizing the failure to detain after inspection "if required" by the immigration officer. A new remedy was provided by forbidding clearance of the vessel until the penalty was paid or secured; under the former statute the procedure was to file a libel. Paragraph (b) was also new, and simplified the matter of proving violations.

It may be argued that the absolute duty imposed by the first clause presupposes that the charterer, agent, and consignee, as well as the owner, will probably rely upon the master of the vessel to perform their obligation to detain the crew until after inspection, and that there is no greater hardship after inspection than before, in requiring them to be bound by the master's failure to prevent a seaman's escape. Nevertheless the statute has drawn a distinction between the two duties; the first being in terms absolute, while the second is conditional upon demand by the inspector. With respect to escape before inspection, Congress imposed an absolute obligation on each of those specified so to act as to prevent an escape by any of the crew. They could trust to the master's diligence or take independent precautions as they might choose. But the statute did not make the master their agent in the premises; it imposed an absolute duty regardless of what means or agents they employed. After inspection, however, the duty exists only if the inspector has required detention. For breach of the duty a penalty is imposed, and penalties are not to be created by implication. To the majority of the court it seems reasonable to believe that Congress did not intend to impose the penalty for failure to heed the inspector's demand unless the demand was brought home to the person sought to be charged, by notice to him or to his authorized agent. Had Congress wished to impose the more stringent obligation it could readily have found an apt expression, by using the phrase "if the master be required." It is true that convenience of enforcement would be served by holding that notice to the master is notice to all, but Congress provided what it evidently thought to be an adequate remedy for collection by authorizing the withholding of clearance of the vessel, and mere convenience of enforcement cannot justify a strained construction of the language used. To us the appellant's contention requires, not an interpretation of the language

used, but an addition of words by implication, so that it shall read, as above suggested, "if the master be required." Such an amendment by implication we do not think justified in a penal statute, where, if the language is ambiguous, the courts lean in favor of the defendant. See United States v. 1150½ Pounds of Celluloid, 82 F. 627, 634 (C. C. A. 6); First Nat. Bank v. United States, 206 F. 374, 376, 46 L. R. A. (N. S.) 1139 (C. C. A. 8); Bolles v. Outing Co., 175 U. S. 262, 265, 20 S. Ct. 94, 44 L. Ed. 156; United States v. Northern Pac. Ry. Co., 242 U. S. 190, 193, 37 S. Ct. 22, 61 L. Ed. 240; Peisch v. Ware, 4 Cranch, 347, 365, 2 L. Ed. 643.

Accordingly, the judgment is affirmed.

L. HAND, Circuit Judge (dissenting).

This is of course a penal statute and we must assume nothing against the defendant, but that is no reason for not giving it such latitude as will effect its whole purpose, if that can be gathered. My brothers agree that the ship's "charterer," "agent" and "consignee" are all personally charged with the duty of holding the whole crew till the inspector comes aboard, but they believe that that duty ceases with the inspection and that no other reappears until notice is given. I agree, and if the charterer has some representative at hand, he will get the notice on the spot, and there is no hiatus; if he has not, I do not agree that the inspector must seek him out, and that meanwhile he is discharged. I do not believe that the charterer's disregard of his original duty ought to excuse him. One may quite reasonably say that if he sends no one to the ship, he deputes the master to act for him; but that will not help him, because the master gets the notice. If he does not depute the master, he has done nothing at all, and I cannot see why his neglect should give him any period of immunity. Congress thought the evil demanded stricter measures; to that end it required all these persons to co-operate actively in its repression. Our decision seems to me to put a premium upon the evasion of the means chosen.