HAWTHORNE, Respondent, v. ARLT, et al, Appellants.

(238 N. W. 153.)

(File No. 7246.   Opinion filed October 5, 1931.)

*H. F. Fellows,* of Rapid City, for Appellants.
*E. B. Adams,* of Hot Springs, for Respondent.

CAMPBELL, J.   In January, 1930, Arlt (one of the defendants herein), as plaintiff, instituted an action in the circuit court in Custer county, S. D., against Hawthorne (plaintiff in the present cause) as defendant, seeking the recovery of certain personal property.   In that action the there plaintiff Arlt invoked the provisional remedy of claim and delivery (Rev. Code 1919, §§ 2411-2422) and claimed the immediate delivery of the personal property involved, and to that end made the affidavit contemplated by section 2412, Rev. Code, 1919, and furnished the written undertaking contemplated by section 2414, Rev. Code 1919, upon which

undertaking the there plaintiff (and present defendant) Arlt was principal and Detroit Fidelity & Guaranty Company, a corporation (codefendant of Arlt in the present case), was surety. The undertaking ran in favor of Hawthorne, defendant in said action (plaintiff in the present cause), and was, in substance, as follows, omitting title of action, signatures, etc.:

"That we, W. G. Arlt, as principal, and Detroit Fidelity & Guaranty Company, as surety, are held and firmly bound unto the defendant above named in the sum of Two Thousand Dollars ($2,000.00) lawful money of the United States, to be paid to said defendant, his heirs, legal representatives or assigns, for which payment well and truly to be made we bind ourselves and each of our heirs and legal representatives jointly and severally by these presents:

"The conditions of this obligation are such, That whereas, the above named plaintiff has commenced the action above entitled to recover from the above named defendant certain personal property in the complaint specified, claims the immediate delivery thereof, and has duly required the Sheriff of said County to take said property from said defendant and deliver it to said plaintiff.

"Now, therefore, we, the undersigned as surety, do hereby undertake and bind ourselves in the sum of Two Thousand Dollars ($2,000.00) for the prosecution of the said action and for the return to the said defendant of the said property if return thereof shall be adjudged and for the payment to the said defendant of any sum as may be recovered in said action against the plaintiff."

Pursuant to the affidavit, undertaking, and requisition in said action of Arlt v. Hawthorne (which we will hereafter for convenience denominate "the claim and delivery action"), the sheriff took possession of the personal property in question. It appears that said claim and delivery action was dismissed without prejudice and a judgment entered therein on May 2, 1930, awarding the return of the personalty in question to the there defendant Hawthorne, and providing that, in case said property was not returned to him in as good condition as when taken, he should have judgment against the there plaintiff Arlt for the sum of $1,000, the value of said property.

Thereafter and on June 16, 1930, Hawthorne (defendant in the claim and delivery action), as plaintiff, instituted the present

action against Arlt (plaintiff in the claim and delivery action) and Detroit Fidelity & Guaranty Company (surety on Arlt's undertaking in the claim and delivery action), as defendants, wherein he seeks to recover the sum of $1,000, with interest as the value of the personalty in question, and the further sum of $1,075 as damages by reason of his being wrongfully deprived of the possession of said personalty. The present action was likewise instituted in the circuit court in Custer county, S. D. The defendant Arlt is, and at all times here involved has been, a resident of Pennington county, S. D., and his codefendant Detroit Fidelity & Guaranty Company is a foreign corporation which maintains no office within the state of South Dakota. Before the expiration of the time for answer defendant Arlt made written demand, pursuant to section 2328, Rev. Code 1919, for the change of the place of trial of the present action to Pennington county, S. D. Plaintiff not consenting thereto, defendant Arlt applied to the court in due form and upon proper showing for an order changing the place of trial, and upon hearing the learned trial judge made and entered his order denying said application for change of place of trial, the effective portions thereof being as follows: "It is hereby ordered, That the aforesaid motion of the said defendant for a change of place of trial of this action be and it is hereby in all things denied upon the sole ground that it appears that this is such an action as is contemplated by subdivision 5 of section 2325 of the 1919 Revised Code of the State of South Dakota; and defendant's said motion is hereby denied upon the sole ground that it is an action for the cause provided in said subdivision 5 of said Code Section 2325." From said order denying his application for change of place of trial, defendant Arlt has now appealed.

██ An order of this nature has always been deemed by this court an appealable order. White v. C. M. & St. P. Ry. Co., 5 Dak. 508, 41 N. W. 730; Ivanusch v. Gt. Northern Ry., 26 S. D. 158, 128 N. W. 333; Fritz v. Hall, 48 S. D. 577, 205 N. W. 378.

The provisions of our statute with reference to place of trial in civil actions are found in sections 2325-2328, Rev. Code 1919.

██ The learned trial judge, as hereinbefore quoted, based his order solely and exclusively on subdivision 5, § 2325, Rev. Code 1919, which reads as follows: "5. All actions brought on a policy of insurance to recover for loss or damage to the property insured

shall be tried in the county where such property is situated at the time of its loss or damage." Counsel for respondent, upon the record before us, suggests no other or better reason for retaining the place of trial of this action in Custer county, S. D. The residence of appellant Arlt in Pennington county and nonresidence in this state of the corporate defendant are conceded, and it seems to be tacitly admitted by all parties that the place of trial of this action should be changed to Pennington county, so far as shown by the record made herein, unless it may be retained in Custer county by virtue of subdivision 5, § 2325, Rev. Code 1919, above set out. We therefore confine ourselves to determining the single question of whether or not the present action is one upon a policy of insurance within the meaning of said subdivision. Joining in the assumption of the parties to this record that the present proceeding is no more and no less than an action against the principal and surety for breach of the undertaking furnished in the claim and delivery action, the question may be thus phrased: "Is an undertaking in claim and delivery furnished pursuant to the terms of section 2414, Rev. Code 1919, a 'policy of insurance' within the meaning of subdivision 5, § 2325, Rev. Code 1919?"

It seems to us that the mere statement of the question above phrased is almost sufficient to demonstrate the necessity of a negative answer. Respondent relies, however, upon the decision of this court in Farmers' Bk. of Reliance v. Equitable Fidelity, etc., Co., 35 S. D. 385, 152 N. W. 512, and the existence of that decision is undoubtedly the explanation of the ruling of the learned trial judge in this case. In the Reliance Bank Case one M. was assistant cashier of plaintiff bank in Lyman county, S. D., and defendant corporations (both organized under the laws of this state) were sureties upon fidelity bonds in the penal sum of $5,000 conditioned for the reimbursement of any losses occasioned by the wrongful acts of said officer M. M. embezzled moneys of the bank, and the bank sued upon the fidelity bonds, bringing the action in Lyman county, S. D. Defendants moved for change of venue, which application was denied by the trial court, and the ruling of the trial court was affirmed by this court on appeal upon the theory that the action was upon an insurance policy, this court holding, in substance, that a bond guaranteeing the fidelity of an officer was equivalent to and identical with an insurance policy insuring the

property in the custody of the officer against loss or damage. There are many features in the instant case which might be relied upon, arguendo, as sufficient to distinguish it from the Reliance Bank Case. Meeting the issue squarely, however, we are of the opinion that this court erred in the decision of the Reliance Bank Case. It may be noted that the Legislature had little confidence in that decision. The decision was filed May 10, 1915, and the next regular session of the Legislature passed a statute (chapter 203, Laws 1917) which, inter alia, provided specifically for the situation involved in the Reliance Bank Case, by introducing into our law subdivision 6 of said act, now subdivision 6, § 2325, Rev. Code 1919, reading as follows: "6. Actions on a bond executed by a surety, fidelity or guaranty company organized under the laws of this state shall be tried in the county where the default or defalcation, provided against in the bond, occurred." If a fidelity bond, as specified in subdivision 6, is in fact a policy of insurance, as specified in subdivision 5, in accordance with the holding of this court in the Reliance Bank Case, then certainly there was no need whatever for the enactment in 1917 of subdivision 6. The passing of that statute was the very plainest kind of legislative declaration to the effect that the Legislature did not understand the phrase "a bond executed by a surety, fidelity or guaranty company" and the phrase "policy of insurance" to be identical terms, the decision of this court in the Reliance Bank Case to the contrary notwithstanding. It is undoubtedly true that the business of writing fidelity bonds is in many respects in the nature of the business of insurance, but that is by no means to say that a fidelity bond and a policy of insurance are identical. They are distinct phrases and have separate and distinct meanings according to ordinary acceptation and usage. In a sense a bond and an insurance policy may serve the same purpose and may be adapted to accomplish the same end in that each is designed to protect the beneficiary thereof from loss, but that does not mean that they are identical or that either includes the other. It would be just as reasonable and quite as necessary to say that a hand ax is, as a matter of fact, a handsaw, because both instruments are adapted and intended for use and used in cutting wood.

Subdivision 5 of section 2325, Rev. Code 1919, relating to the venue of actions on "a policy of insurance," came into our

law by chapter 23, Laws of Dakota 1887. It is a cardinal and fundamental principle of statutory interpretation that words used by the Legislature, in the absence of special circumstances showing to the contrary, are used in their ordinary, popular, and general signification. Territory v. Stone, 2 Dak. 155, 4 N. W. 697; Landauer v. Conklin, 3 S. D. 462, 54 N. W. 322; Christopherson v. Reeves, 44 S. D. 634, 184 N. W. 1015. The language of Circuit Judge Sanborn in Northern Pac. Ry. Co. v. United States (C. C. A. 8th Circuit) 213 F. 162, 168, 129 C. C. A. 514, L. R. A. 1917A, 1198, affirmed in 242 U. S. 190, 37 S. Ct. 22, 61 L. Ed. 240, has a peculiar and striking pertinence when applied to the decision of this court in the Reliance Bank Case. Judge Sanborn said: "The natural apparent meaning of the terms of a statute should always be preferred to any recondite signification discovered only by study, ingenuity, and strong desire." Certainly it requires both vast ingenuity and strong desire to justify the pronouncement that a fidelity bond is a policy of insurance. The words "policy of insurance" had a common generally accepted and understood signification when they came into this particular statute in 1887. At that time such general acceptation and understanding had already endured for more than two centuries and it has continued ever since. In the new Oxford English Dictionary (sub. nom. "policy") we find the following definition: "Policy of assurance, or insurance policy: A document containing an undertaking, in consideration of a sum or sums paid down at the time, or to be paid from time to time, called a premium or premiums, to pay a specified amount or part thereof in the event of a specified contingency, such as the loss of property at sea or its destruction by fire, or, in the case of a life insurance, on the death of the person named in the policy."

Part 2 of division 4 of title 1 of the Revised Code of 1919 (sections 803-1704) deals with the subject of contracts. Chapter 12 of part 2, div. 4, tit. 1 (sections 1365-1473), deals with insurance, chapter 13, pt. 2, div. 4, tit. 1 (sections 1474-1497), with guaranty, and chapter 14, pt. 2, div. 4, tit. 1 (sections 1498-1521), with suretyship. Article 5 of chapter 12, pt. 2, div. 4, tit. 1 (sections 1409-1422), deals with the policy of insurance. Sections 1409 and 1410, Rev. Code 1919, being the first two sections of said article 5, are as follows:

ö

"The written instrument, in which a contract of insurance is set forth, is called a policy of insurance.

"A policy of insurance must specify:

"1.   The parties between whom the contract is made;

"2.   The rate of premium;

"3.   The property or life insured;

"4.   The interest of the insured in property insured, if he is not the absolute owner thereof;

"5.   The risks insured against; and,

"6.   The period during which the insurance is to continue."

The undertaking sued upon in the instant case was given pursuant to section 2414, Rev. Code 1919. Said section does not provide for the execution and delivery of a policy of insurance. It requires "a written undertaking executed by one of more sufficient sureties." It seems to us too plain for serious argument that such written undertaking is not "a policy of insurance" in the common and ordinary acceptation of the words or as defined in sections 1409, 1410, Rev. Code 1919. The words "a policy of insurance" and "property insured" in subdivision 5, § 2325, Rev. Code 1919, ought to be construed according to their general and common acceptation and intendment. When so construed, they cannot, we think, be held to include either an employee's fidelity bond or a plaintiff's undertaking pursuant to statute in claim and delivery.

The previous decision of this court in Farmers' Bk. of Reliance v. Equitable Fidelity, etc., Co., 35 S. D. 385, 152 N. W. 512, is expressly overruled, and the order appealed from is reversed.

POLLEY, P. J., and ROBERTS, WARREN, and RUDOLPH, JJ., concur.