ROSEBUD LUMBER & COAL CO., A Corporation,
Respondent, v. RYAN, et al, Appellants

(289 N. W. 81.)

(File No. 8216.   Opinion filed December 12, 1939.)

Tom Donahue, of White River, and **Sutherland & Payne,** of Pierre, for Appellants.

**W. J. Hooper,** of Gregory, for Respondent.

SMITH, J. Does the maximum rate of levy fixed by § 6737, Rev. Code of 1919, SDC 57.0511, restrict the power granted counties by § 5792, Rev. Code of 1919, SDC 12.1805, to raise revenue for the purpose of discharging judgments?

The Rosebud Lumber and Coal Company, a judgment creditor of Mellette County, by this action sought, and was granted, a writ of mandamus commanding the Board of Commissioners of that county to make an annual levy equal to fifteen per cent of the amount remaining unpaid on its judgment for the purpose of paying and discharging the amount due thereon. Under similar writs previously issued, the Board is under mandate to levy annual amounts to pay other judgments. That the Board cannot comply with the instant command, and at the same time provide sufficient revenue with which to support the normal functions of the County and to comply with the previous mandates without imposing a rate of levy in excess of the maximum permitted by § 6737, supra, is admitted. The judgment of the learned trial court was entered on the second day of September, 1937, and was predicated upon a negative answer to the question we have phrased. The power of the Legislature to control the rate of levy of its governmental units is not involved. Cf. Fremont, E. & M. V. Railway Co. v. Pennington County et al., 20 S. D. 270, 105 N. W. 929; State ex rel. Coolsaet et al. v. City of Veblen et al., 58 S. D. 451, 237 N. W. 555.

The portions of the governing sections to be considered read as follows:

§ 5792, supra. "When any judgment is obtained against a county the board of county commissioners shall have power at any time after the expiration of six months from the rendition thereof to assess and collect a sufficient amount of revenue to pay off and discharge such judgment, in addition to the ordinary expenses of the county.  *  *  *"

§ 6737, supra. "County Levy. The total annual county tax levy for all purposes shall not exceed the following rate: *  *  *

"2.  In counties having an assessed valuation of more than two million dollars and not exceeding four million dollars, the levy shall not exceed nine and one-half mills on the dollar of assessed valuation."

Section 6737, supra, originated as a part of Chapter 292 of the Session Laws of 1915. That act was described in its title as "An Act Limiting the Rate of Tax Levy in the Several Taxing Districts of the State of South Dakota." Section 1 thereof was entitled "Limit of Tax Levy in Counties" and included the applicable language we have quoted supra from § 6737. Section 2 was entitled "Limit of Tax Levy in Cities" and became § 6739, Rev. Code of 1919. Other sections prescribed maximum rates for our towns, townships, common school districts, and independent school districts, respectively. Section 9 thereof reads as follows:

"Nothing in this Act shall be construed to prohibit the making of any levy directed by the order of any court for the purpose of paying a judgment or judgments against any taxing district for indebtedness created or existing prior to the passage and approval of this Act."

The substance of this language was carried forward as § 6745, Rev. Code of 1919, SDC 57.0519.

■ In terms too clear to be misunderstood, this act reveals an intention to place general, all embracing, maximum limitations upon the taxing power of our local governmental units. From the fact that section 9 thereof deals

with levies for the purpose of paying certain judgments, it becomes certain that the Legislature had that subject in mind and intended the act to comprehend and restrict levies to be made for the benefit of judgment creditors of the taxing districts in general. Otherwise it would have felt no need of inserting an exception for the benefit of creditors whose judgments were based upon pre-existing indebtedness, for the obvious purpose of thwarting attacks based on constitutional grounds. Cf. Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395. In view of this intention so clearly expressed, a judgment creditor who claims a district has power to reach beyond the limits fixed by this act and levy a tax for his benefit must be able to point to some other statute which modifies the provisions contained therein. The creditor here asserts that the phrase "in addition to the ordinary expenses of the county" contained in § 5792, supra, was intended by the Legislature to create such an exception and to permit levies for the benefit of county judgment creditors in addition to the maximum rate of levy established by § 6737, supra. So our inquiry may be re-phrased to read "Did the Legislature intend to express the meaning 'in addition to the maximum rate of levy provided by law' by the words 'in addition to the ordinary expenses of the county'?"

█ "It is a cardinal and fundamental principle of statutory interpretation that words used by the Legislature, in the absence of special circumstances showing to the contrary, are used in their ordinary, popular, and general signification." Hawthorne v. Arlt et al., 59 S. D. 76, 238 N. W. 153, 155.

█ Obviously the foregoing elementary canon of interpretation will not assist the creditor in reading the meaning into this statute for which he contends. The ordinary signification of the words employed does not convey that meaning. In common parlance, "in addition to ordinary expenses" would not be understood as meaning "in addition to the maximum rate of levy provided by law." Neither can it be said that the words used have acquired such a technical meaning. Those most familiar with county affairs

will be the first to declare that "ordinary expenses" and "maximum rates of levy" describe distinct concepts.

May it fairly be said that circumstances indicate that the Legislature used these words in a sense foreign to their ordinary meaning? In writing of the circumstances courts have deemed sufficient to justify a departure from the letter of a statute, Maxwell on the Interpretation of Statutes, seventh edition, page 198, has this to say:

"Where the language of a statute, in its ordinary meaning and grammatical construction, leads to a manifest contradiction of the apparent purpose of the enactment, or to some inconvenience or absurdity, hardship or injustice, presumably not intended, a construction may be put upon it which modifies the meaning of the words, and even the structure of the sentence. This may be done by departing from the rules of grammar, by giving an unusual meaning to particular words, by altering their collocation, by rejecting them altogether, or by interpolating other words, under the influence, no doubt, of an irresistible conviction that the Legislature could not possibly have intended what its words signify, and that the modifications thus made are mere corrections of careless language and really give the true meaning."

Conceding that circumstances may justify a departure from the native sense of the words employed, we have sought to ascertain whether reasons exist tending to create an abiding conviction that the true intention the Legislature sought to convey, by this statute, was as asserted by the creditor.

Does the language of this statute, when construed in accordance with the ordinary meaning of its words, lead to absurdity, hardship, inconvenience, or injustice? The net result of such an interpretation is to render available to the judgment creditor the difference between the total amount which will be produced by an application of the maximum rate and that amount which the board of commissioners, in the exercise of their sound discretion, may determine to levy for the reasonable, ordinary, expenses of the county.

■■ The natural but erroneous tendency is to test a suggested construction by the aid of present conditions. The interpreter must attempt to place himself in the position of those who used the words at issue. 25 R.C.L. 959. Because the extreme dislocations of the present day could not have been anticipated by those who enacted this provision, such unforeseeable circumstances must be excluded from the factors from which we reason to a conclusion and be left to exert their influence on the Legislature. Under pretext of interpreting statutes, we may not amend them so as to fit their provisions to changed conditions.

No reason is suggested which would justify the conclusion that the Legislature which adopted these provisions originally, or the one which re-adopted them as a part of the Revised Code of 1919, believed that their application would fail to produce a sufficient revenue to maintain the ordinary functions of county government and provide an ample margin for the benefit of its judgment creditors. The provisions of § 5792 have had place in our law since early territorial days. During all of the intervening time, the maximum rates of levy to which we have adverted, or lesser rates, have been in force. The very lapse of time required to confront this court with this issue offers some evidence that these rates of levy did in fact produce a sufficient revenue to maintain the county government and discharge the claims of judgment creditors. Hence, it can not be said that departure from the ordinary meaning of the words can be justified on the theory that interpretation according to that sense leads to a "manifest contradiction of the apparent purpose" of the Legislature.

What of legislative history? The words "in addition to the ordinary expenses of the county" first appeared as a part of section 30 of Chapter 4 of the Session Laws of 1868-69. That section provided for a lien upon county property for the benefit of a judgment creditor, but said "no execution shall issue thereon until the board of county commissioners shall have had six months time to assess and collect a sufficient amount of revenue, under the provisions of this

chapter, to pay off and discharge said judgments, **in addition to the ordinary expenses of the county.**" Amendment of its terms came by Chapter 54 of the Session Laws of 1881 which caused it to read as follows:

"When any judgment is obtained against a county, the board of county commissioners shall have power at any time after the expiration of six months from the rendition thereof, to assess and collect a sufficient amount of revenue, under the provisions of said chapter twenty-one, to pay off and discharge said judgment, **in addition to the ordinary expenses of the county.** \* \* \*"

We have searched the provisions of these chapters for some convincing indication of an intention to grant an unfettered power to raise revenue for the benefit of judgment creditors. All indications discovered, however, point in the opposite direction. For instance, it should be noted that these two early sections qualified the right to raise revenue by the words "under the provisions of this chapter." The chapters in question made no provision for general levies. Such levies were provided for by other chapters. They did, however, contain the following significant limited grant of power to the board, namely, "To levy a tax not exceeding the amount authorized by law, and to liquidate indebtedness." Section 2 of § 5878, Rev. Code of 1919, SDC 12.0617.

The next circumstance we consider is the ruling of this court in the case of State, ex rel. Coolsaet, et al. v. City of Veblen, et al., supra. In that case this court held that the use of the words "be added to the amount authorized to be raised by the next general tax levy, \* \* \* and embraced therein" contained in § 6335, Rev. Code of 1919, (later amended by Chapter 152 of the Session Laws of 1933, and carried forward as SDC 45.1404) established an intention on the part of the Legislature to provide for a levy for the purpose of paying a judgment against a city in addition to the maximum rate of levy fixed by § 6739, Rev. Code of 1919, SDC 57.0517. The interpretation of these cognate provisions has logical significance because, as indicated supra, § 6739 originated as section 2 of Chapter 292 of the Session Laws

of 1915. The fact that the Legislature intended to lift the provisions for the benefit of a city judgment creditor from the limitations fixed by Chapter 292, supra, offers a basis from which to reason that they must have intended a like benefit for judgment creditors of other taxing districts. The circumstances, however, do not permit such a conclusion. As we have observed, section 9 of Chapter 292, supra, leaves no doubt but what the Legislature intended thereby to create a general restriction on the power to levy for the benefit of judgment creditors of our taxing districts. The holding in the Veblen case, supra, was based on the ordinary meaning of the words there interpreted. The words at bar are wholly dissimilar, were adopted at a different time, and present a separate problem of interpretation. Hence we do not look upon the holding in that case as controlling here.

An examination of all of these factors has not induced a conviction that the Legislature employed the words at issue in any other than their ordinary and natural significance. We therefore hold that the maximum rate of levy provided by § 6737 was intended to restrict levies made pursuant to the grant of power contained in § 5792.

■ The final contention of the creditor is that the judgment below may be supported as a command to exercise the power of levy to discharge the floating indebtedness of the county. This contention is based upon section 19 of Chapter 79 of the Session Laws of 1927 as amended by Chapter 77 of the Session Laws of 1937, being a section of what is commonly known as the "County Budget Law." The contention does not gain our assent.

■ We do not now consider whether the Legislature intended to grant an unrestricted power of levy by the section cited. By this statute, the board of county commissioners were directed, under certain circumstances, to fund the floating debt of the county in one of two methods, namely, by issuing funding bonds, or by levying a tax. Whether such funding was to have been done in the one way or the other was left to the sound discretion of the board of commissioners. It is apparent from the terms of the writ issued,

and of the application of the creditor therefor, that the learned trial court did not command the board to exercise its power to fund the county's floating indebtedness. However, if the judgment were to be viewed as commanding the exercise of that power, it could not stand. A discretion was lodged in the board of commissioners to determine whether it would issue bonds or levy a tax. Mandamus may not be invoked to compel the exercise of a discretion in a particular manner. 38 C. J. 594.

The judgment of the learned trial court is reversed.

Costs will not be taxed.

WARREN, P.J., and ROBERTS and RUDOLPH, JJ., concur.

POLLEY, J., absent and not sitting.