NESET v. CHRISTENSEN et al.
Civ. No. 108–29.

United States District Court
E. D. New York.
June 22, 1950.

Silas B. Axtell, New York City, for plaintiff, Richard Gyory, New York City, of counsel.

Pyne, Lynch & Smith, New York City, for defendants, Warner Pyne, Thomas A. Sully, New York City, of counsel.

GALSTON, District Judge.

This is a motion to vacate service of a summons and complaint.

Neset, a resident of Brooklyn, but an alien of Norwegian nationality, instituted this action to recover damages for personal injuries allegedly suffered while employed as a member of the crew of the M/S Hermund, and while said vessel was on the high seas. He seeks also to recover damages for the alleged failure to furnish him with proper medical care, together with maintenance and cure.

The complaint alleges that Skibs A/S Oilexpress Company is a Norwegian corporation which owns, operates and controls the M/S Hermund. The defendant, Christensen, is alleged to be employed by the defendant corporation as master of the M/S Hermund, with authority "to bind the defendants for various fees and expenses, as well as to hire crew members" and make the defendants liable therefor, and represents the defendant. It is also alleged that the plaintiff signed on in the port of New York in July 1949 as a seaman, had made four trips from New York to Europe (to the ports of Hamburg, Bremen, Rotterdam and Antwerp), and was injured on his fifth voyage back to New York. Jurisdiction is alleged in this court under the Jones Act, 46 U.S.C.A. § 688, and the general maritime law.

Service of summons and complaint was made on or about May 3, 1950 on Alf Christensen (referred to in the complaint as R. Christensen), the then acting master of the M/S Hermund. It appears from the moving affidavit that the M/S Hermund was under a time charter of September 3, 1949 to the Black Diamond Steamship Corporation, and that the time charter was in full force and effect in December 1949, when the alleged injury to plaintiff occurred and in May 1950, when service was made on Alf Christensen. The time charter was entered into in New York City and is signed by a Naess, Mejlaender & Co.,

Inc., as broker, for the defendant corporation.

An affidavit submitted by the plaintiff in opposition to the defendants' motion to vacate, indicates that in 1949 the M/S Hermund made eight calls at the port of New York and six calls at this port to date in 1950.

During the hearing on this motion, as well as in the affidavit opposing this motion, plaintiff stated that he is not seeking a personal judgment against the defendant Christensen, and that service upon him was solely for the purpose of obtaining jurisdiction over Skibs A/S Oilexpress Company. Therefore, the question for determination on this motion is whether such service is sufficient to confer jurisdiction over the corporate defendant.

So far as the action is based on the maritime law, the law of the flag, viz. Norway, is the law applicable here. Consequently, and since the action is between aliens, it is within the discretion of the court to accept or refuse jurisdiction.

Although plaintiff is an alien seaman seeking to recover damages for injuries suffered on the high seas while serving on board an alien ship, he is entitled to maintain an action under the Jones Act since he signed articles of employment in the United States, Taylor v. Atlantic Maritime Co. et al., 2 Cir., 1950, 179 F.2d 597. Therefore, there is jurisdiction over the subject-matter. However, in an in personam action, service of process on a defendant is effective only if the court can acquire jurisdiction of the person of the defendant.

Under the time charter, the M/S Hermund was hired to carry freight for the charterers exclusively. The ports of call were "as the Charterers or their Agents shall direct". The defendant corporation contends that since the vessel was engaged exclusively in the business of the time charterer, so that any calls it made at the port of New York were solely for the purpose of picking up and discharging freight for the charterer's account, the defendant corporation cannot be regarded as within

the jurisdiction of this court on the basis that it is doing business in New York.

Plaintiff, on the other hand, points to the provisions in the time charter requiring that the owners shall be responsible for navigation and crew (Paragraph 26 of the time charter), and shall provide and pay for all provisions, wages, insurance and for necessary stores, and maintain the vessel in an efficient state (Paragraph 1); together with the additional facts that the time charter was made in New York City and that the vessel has made fourteen calls to the port of New York in 1949 and 1950, as indicating that the defendant corporation is doing business here.

In the recent case of International Shoe Co. v. State of Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057, the Supreme Court reviewed this problem of obtaining personal jurisdiction over a foreign corporation. The Court stated that if the activities of a foreign corporation without the state of its origin have not only been continuous and systematic, but also give rise to the liabilities sued on, it can be regarded as being "present" where those activities are carried on, even though no consent to be sued or authorization to an agent to accept service of process has been given. It was pointed out further that the test in determining whether a foreign corporation is "present" cannot be simply mechanical or quantitative. The Court, 326 U.S., at page 319, 66 S.Ct. at page 160, continued:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws * * * That clause does not contemplate that a state may make binding a judgment in personam against * * * a corporate defendant with which the state has no contacts, ties, or relations * * *.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue."

There, defendant was a Delaware corporation having its principal place of business in St. Louis, Missouri. It maintained several places of business in several states, but not in the State of Washington. It had no office in Washington and it made no contracts there for sale or purchase of merchandise. During the years in question it employed eleven to thirteen salesmen under the direct supervision and control of sales managers located in St. Louis. These salesmen resided in Washington and their principal activities were confined to that state. They were furnished with samples to display to prospective purchasers; and they rented permanent sample rooms on occasion, the cost of rentals being reimbursed by defendant.

The salesmen's authority was limited to exhibiting their samples and soliciting orders from prospective buyers, at prices and terms fixed by defendant. Orders obtained were transmitted to defendant's office in St. Louis for acceptance or rejection, and when accepted, the merchandise was shipped f. o. b. from points outside Washington. No salesmen had authority to enter into contracts or make collections.

On these facts the Court held that defendant was doing business in Washington so as to render it amenable to suit in the state courts to recover payments under a state law requiring employers to pay into the state unemployment compensation fund. It was held, further, that service of process on a salesman, whose activities established the defendant's "presence" in the state, was sufficient.

In the case at bar, the fact that the time charter was made and concluded in the City of New York indicates the presence of an agent of defendant corporation conducting certain activities of the corporation here. Furthermore, plaintiff signed articles of employment here in New York, and the present cause of action arises out of that particular activity and is directly related thereto.

It is true, as the defendant corporation points out, that calls made to the port of New York were made under orders, not of the ship owner, but of the charterer. However, entering into the time charter did not mean that defendant was no longer doing business. The time charter expressly provides that there is to be no demise of the vessel to the time charterer (Paragraph 26). Moreover, after arriving in New York under the direction of the charterer, such matters as provisions, wages, ship's stores, hiring and discharging crew and other matters already referred to, were and are the responsibility of the owner under the time charter. It is reasonable to assume, since the M/S Hermund was engaged in transatlantic trips rather than in short coastal traffic, that these activities required the owner's attention when the vessel called at the port of New York.

■ As noted, some fourteen calls were made by the M/S Hermund at New York. Plaintiff's affidavit indicates that this vessel is the only vessel owned by the defendant corporation. In the circumstances, fourteen calls within a period of at most seventeen months can be regarded as establishing a regular pattern of visits rather than irregular or haphazard calls. Therefore, it can be concluded that the defendant corporation is doing business in New York. See also Van Horn v. Waterman S. S. Corp., D.C.Pa.1944, 71 F.Supp. 347, where vessels of a foreign steamship company were time chartered to another company (and later to the United States). The court held that the owner company was doing business in Pennsylvania although, as here, under the time charter the owner had nothing whatever to do with where the ships should go or what ports they should visit.

Finally, there remains for determination the question whether service upon Christensen constitutes a valid service so as to subject the defendant corporation to the jurisdiction of the court. Subsection d(3) of Rule 4 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides that service may be made on a foreign corporation by service of process on " * * * an offi-

cer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process * * *."

■ The validity of service under federal statutes is a matter of federal law. Jacobowitz v. Thomson, 2 Cir., 1944, 141 F.2d 72, 75.

Christensen is not an officer of defendant corporation, nor is he an agent authorized by express appointment to accept service of process; but plaintiff contends that Christensen is a managing agent of the defendant corporation.

In Butler v. Boston & Savannah Steamship Co., 1889, 130 U.S. 527, page 544, 9 S.Ct. 612, page 618, 32 L.Ed. 1017, it was stated: "By virtue of his office, and the rules of maritime law, the captain or master has charge of the ship and of the selection and employment of the crew * * *."

■ Moreover, the master of a vessel is presumed to have authority from the owner to procure supplies and other necessaries for the vessel. The Penza, 2 Cir., 1925, 9 F.2d 527; 46 U.S.C.A. § 972; see also The Kate, 1896, 164 U.S. 458, 465–466, 17 S.Ct. 135, 41 L.Ed. 512. As already noted, under the time charter the responsibility of proper navigation, crew, provisions and ship's stores is with the owner. There is nothing here to negate the usual authority in the master to act for the owner. Paragraph 8 of the time charter provides: "The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; * * *."

An identical provision was included in the charter involved in the case of The Penza, supra, and the court held that such provision does not diminish the master's power of procuring necessaries on the credit of the ship.

It may be that where a ship owner has a number of vessels making calls at a port or ports, good business practice would call for an agent on shore to look after such activities as obtaining necessaries for the ships. On the other hand, where the owner has but one vessel and that under a time

charter whereby the ports of call are determined by the charterer, the owner might well conclude not to provide a shore agent under regular and continuous hire, since he would not know at what ports the vessel would call or at what intervals the calls would be made at any one port.

It would seem, therefore, that the activities which establish the defendant corporation's "presence" are those within the usual authority of the master to act as managing agent for an absent principal. Consequently, under the rule established in the International Shoe Co. case, supra, service of process upon Christensen can be regarded as sufficient to confer jurisdiction over the corporate defendant.

The conclusion above will result in substantial justice to the parties. So far as it is disclosed on this motion, New York is the only port of call of the M/S Hermund in the United States. Failure to obtain jurisdiction over the defendant corporation here then would force the plaintiff to go to Norway. Nor is that all, for there would be the additional burden of getting his witnesses—presumably other members of the crew, since the alleged injury occurred aboard ship on the high seas—to Norway at such times as the vessel put into one of the ports of call in Europe, which do not include any Norwegian port. On the other hand, since the vessel continues, so far as it is shown, to make New York a port of call, the defendant corporation's witnesses, again assuming they will be crew members, are readily available to testify at a trial here without burdening defendant unduly.

A showing that the defendant corporation is doing business in the port of New York is not necessarily a showing that proper venue is in this district, for section 1391(c) of 28 U.S.C.A. requires a showing that the corporation is doing business in the judicial district. However, improper venue is not urged as a ground for this motion. Rule 7(b) of the Federal Rules of Civil Procedure requires that the motion "shall state with particularity the grounds therefor". Improper venue, being a personal defense, may, of course, be waived. Failure to include the defense in this motion constitutes a waiver under Rule 12(g) and (h) of the Federal Rules.

In view of the foregoing the motion is granted as to defendant R. Christensen (Alf Christensen), and denied as to Skibs A/S Oilexpress Company. Settle order.