**D. W. Evans et al., Appellees, v. Alvanley Johnston et al., Appellants.**

**Gen. No. 39,978.**

Opinion filed April 26, 1939.
Rehearing denied May 8, 1939.

McNab, Holmes & Long and Theodore Schmidt, all of Chicago, and Horn, Weisell, McLaughlin & Lybarger, of Cleveland, Ohio, for appellants; Joseph T. Scott and Theodore Schmidt, both of Chicago, and C. E. Weisell, of Cleveland, Ohio, of counsel.

Deneen & Massena, of Chicago, for appellees; Marshall A. Pipin and Charles S. Deneen, of Chicago, of counsel.

Mr. Presiding Justice Denis E. Sullivan delivered the opinion of the court.

This proceeding originated in a bill of complaint being filed and, with the exception of one or two minor amendments, it is agreed in the briefs that the following statement of the proceedings is correct.

Suit was brought by certain employees of the Pennsylvania Railroad, holding the rank of locomotive engineers, who had worked on that part of the Pennsylvania Railroad which runs from Chicago to Clarke, Indiana, hereinafter referred to as the Ft. Wayne Seniority District, said employment having dated prior to December 1, 1930. Said action was brought against the engineer employees on the Pennsylvania Railroad, who prior to December 1, 1930, had worked

on that part of the Pennsylvania Railroad which runs from Chicago to Berenice, Illinois, hereinafter referred to as the "Pan Handle Seniority District," nine Ft. Wayne engineers who did not join in the complaint, The Pennsylvania Railroad Company and certain officers and officials of the Brotherhood of Locomotive Engineers, individually and as representatives of the Brotherhood.

The plaintiffs sought to have declared null and void a certain merger agreement entered into between representatives of the general committee of adjustment of the Brotherhood of Locomotive Engineers, and the Pennsylvania Railroad Company, effective December 1, 1930, by which the engineers' seniority rosters on the Ft. Wayne and Pan Handle Seniority Districts on the Chicago Terminal Division of the Pennsylvania Railroad were dovetailed as of the date of hire and a permanent injunction restraining the defendants from following or recognizing said merger agreement in the employment of engineers on said Chicago Terminal Division of the Pennsylvania Railroad.

In the bill of complaint it is alleged that all of the complainants, amounting to between 100 and 200, with the exception of three of their number, are residents of Cook county in the State of Illinois, and that the three mentioned are residents of Valparaiso, Indiana; that all of these plaintiffs are now, were at the time of the acts complained of and for a long time prior thereto employed by the defendant the Pennsylvania Railroad Company, a foreign corporation admitted to do and doing business within the State of Illinois; that they are locomotive engineers or firemen, although all have seniority status and ranking as engineers; that the Pennsylvania Railroad Company is engaged in interstate and intrastate railroad business within the State of Illinois; that the defendants Fred Koehn and

some 50 others are also employed by the defendant the Pennsylvania Railroad Company as locomotive engineers and firemen and were so employed at the time of the acts herein complained of; that all of the last named defendants except P. T. Reilly are residents of the county of Cook and State of Illinois; that said Reilly is a resident of Valparaiso, Indiana.

The bill of complaint further alleges that there is a voluntary unincorporated association and labor union known as the Grand International Brotherhood of Locomotive Engineers and said labor union consists of many thousands of members distributed over the United States of America; including many hundreds within the State of Illinois; that said Grand International Brotherhood of Locomotive Engineers commonly known as and hereinafter referred to as the Brotherhood, has for its declared purpose in the United States and Canada and within the State of Illinois the object of and is engaged in improving the conditions and terms of employment of and in advancing the interests of railroad employees and especially those employed as or having earned seniority status as locomotive engineers; that said Brotherhood was at the time of the acts herein complained of and for a long time prior thereto engaged in promoting said objects within the State of Illinois; that Alvanley Johnston, a resident of Cleveland, Ohio, now is and was at the time of the acts herein complained of the grand chief engineer, which is the highest office and analogous to president of said Brotherhood; that the defendant John Binschip is and was at the time of the acts herein complained of a member of the General Committee of Adjustment, Pennsylvania lines west, a subdivision of the Brotherhood and handles the relations of members of the Brotherhood with the defendant Pennsylvania Railroad Co.; that the other members of the General Committee of Adjustment, Penn-

sylvania Lines West, are nonresidents of the State of Illinois and not amenable to process of this court; that A. O. Smith is an assistant grand chief engineer and that he handled all Brotherhood matters within the State of Illinois and is the only officer of the Brotherhood within the State of Illinois; that there are many local and subordinate lodges known as divisions of the Brotherhood, which divisions are themselves voluntary unincorporated associations of many members; that division 231 is such a division of the Brotherhood and has for its members those of the Brotherhood who are employed by the Pennsylvania Railroad Company on those portions of the railroad herein concerned; that Herman Seibold is chief engineer which is the highest office of a division and is analogous to president, of Division 231, and John Binschip is local chairman of said division, which position is one of the principal offices of the division and its occupant handles grievances and other matters involving the relation of employer and employee with the defendant the Pennsylvania Railroad Company; that said S. W. Wesley is the first engineer or first vice president of said division; that L. Goss is second engineer or second vice president of said division; that Alvanley Johnston, John Binschip, Herman Seibold, S. W. Wesley and L. Goss are made parties defendant individually and as representatives of and to act for and on behalf of the said voluntary unincorporated association, the Grand International Brotherhood of Locomotive Engineers and all of the members thereof; that in addition to his personal and other representative capacities John Binschip is made a defendant as representative of the said General Committee of Adjustment, Pennsylvania Lines West; that in addition A. O. Smith is made defendant as representative of and to act with the other defendants for and on behalf of the Grand International Brotherhood of Locomotive Engineers

and of all the members thereof; that Herman Seibold, John Binschip, S. W. Wesley and L. Goss are made parties defendant individually and as representatives of and to act for and on behalf of the said voluntary unincorporated association, Division 231 of the Grand International Brotherhood of Locomotive Engineers and of all the members thereof.

When the matter was at issue the cause was referred to a master who made a report which found that equity had jurisdiction over such seniority, the master finding:

1. That the merger agreement violated the rights of the plaintiffs under the 1928 schedule of regulations and rates of pay for the government of employees on the Pennsylvania Railroad between the Brotherhood and the railroad.

2. That decisions were made within the Brotherhood by the grand chief engineer and the Brotherhood in convention on the following points of Brotherhood law:

(a) that the general committee of adjustment did not lose jurisdiction to effect the merger with the railroad by the adoption by the local lodge 231 of the Brotherhood of a motion to withdraw the original merger resolution.

(b) that section 34 (c) of the standing rules of the Brotherhood providing for a two-thirds vote of the members affected by a merger did not apply to the merger on the Chicago terminal division because the section had been enacted *after* the merger matter had been submitted to the general committee.

(c) that section 35 (b) of the standing rules of the Brotherhood had no application to the merger, were arbitrary and unreasonable; that the counting and tabulating by the general committee of the appeal ballots to the system on the merits of the merger was illegal, and that actual fraud had been practiced and

committed on the Ft. Wayne members of the local lodge by officers and tribunals of the Brotherhood.

Objections were filed by the defendants and also by the plaintiffs to the findings of the master which objections, by an order entered in the trial court, stood. as exceptions to the master's report before the court.

In its decree the court (1) sustained the defendants' exceptions to the fraud findings of the master and sustained the defendants' exceptions to the findings of the master that decisions within the Brotherhood on the matter of the appeal ballots and section 35 (b) of the standing rules were arbitrary and unreasonable and overruled the balance of defendants' exceptions, sustained plaintiffs' exceptions three and four and overruled the balance of plaintiffs' exceptions.

(2) Enjoined the defendants from further enforcing or recognizing the said merger agreement.

(3) Reinstated the original, separate and independent seniority districts and rosters for the Ft. Wayne and Pan Handle seniority districts and decreed that the separate rosters be recognized and followed in the assignment of work for engineers on the Chicago terminal division.

(4) Taxed costs, including the master's fees, against the defendants, jointly and severally.

No point is raised on the pleadings.

Plaintiffs' theory of the case is as follows:

1. The schedule is a third party beneficiary contract between the Railroad and the Brotherhood for the benefit of the engineer employees and under it the plaintiffs and the other employees had individual as well as joint rights, including those of seniority.

2. While the schedule may be amended by the Railroad and the Brotherhood by virtue of the reservation therein, neither the Railroad alone nor the Railroad and the Brotherhood together may waive or disregard as to certain employees the application of the schedule,

including regulation 3–D–1 which applies to all consolidations.

3. Apart from the rights under regulation 3–D–1, if the seniority of members is adversely affected by action of Brotherhood officials which, as here, is either contrary to the laws of the Brotherhood or fraudulent, the members so affected are entitled to judicial relief.

4. The courts are not bound by interpretations placed by brotherhood officials on the laws of the Brotherhood which, as here, substitute legislation for interpretation, transgress the bounds of reason, common sense or fairness, or are arbitrary or are not made in good faith.

5. Regulation 7–B–1 is not a reservation or delegation of authority to the general committee of adjustment as agent for the individual employees but the extent and limitation of the authority of the general committee to act for the engineer employees is found in the laws of the Brotherhood and in the limitations placed by the court on this type of agency.

6. The Railroad had the responsibility of ascertaining the authority of the general committee and further had notice of such facts as prevent it from holding the plaintiffs to the consolidation.

7. Equity will give relief because seniority is a property or other right of such a nature as equity will enforce and because if considered only as a contractual right the damages are unascertainable, continuing and irreparable.

Defendants' theory of the case is:

1. That the railroad and the general committee of adjustment of the Brotherhood, as the original parties to the schedule, had full power and authority to adjust the seniority of the engineers on the Chicago terminal division by the merger agreement of November 10, 1930, and that this authority had been expressly reserved to the general committee by regulation 7–B–1

of the schedule and expressly granted to the general committee by sections 34 (b) and 36 (a) of the standing rules of the Brotherhood.

2. That regulation 3–D–1 of the schedule was not applicable to mergers of seniority districts not made at the management's directions.

3. That Brotherhood law and procedure were followed in every respect in effecting the merger and that the acts and decisions of the grand chief engineer, the Brotherhood in convention, and the general committee of adjustment of the Brotherhood are binding upon the court.

4. That the Railroad had no notice of the alleged violations of Brotherhood law or of the alleged restrictions on the authority of the general committee of adjustment to effect said merger.

5. That seniority is not such a property right as will be enforced or protected in equity.

It appears from the evidence that on November 10, 1930, an agreement between the representatives of the Brotherhood of Locomotive Engineers and the Pennsylvania Railroad Company was entered into by which the Ft. Wayne and Pan Handle seniority rosters on the Chicago terminal division were consolidated and provided that all engineers on the consolidated roster would rank thereon as of date of hire. It is this merger or consolidation which is the subject of the controversy in this case.

In the organization known as the Brotherhood of Locomotive Engineers, its supreme governing body is known as the grand international division and is composed of the grand chief engineer and the other grand officers of the Brotherhood and delegates from the local lodges. The grand international division meets triennially in the convention and has legislative authority as well as authority to determine questions of appeal which are presented to it. The chief executive

officer is known as the grand chief engineer. The Brotherhood is divided into subordinate lodges known as divisions, each with officers selected by the membership of the division. The chief executive officer of a local lodge is the chief engineer. Each local division of the Brotherhood elects a committee known as the local committee of adjustment. On each railroad or operating division of a railroad there is organized a general committee of adjustment, the members of which are the chairman of the local committees of adjustment from all the divisions on the railroad or operating districts. The general committee meets triennially and its chairman is the committee between sessions. The general committee negotiates agreements with the carrier and in general is in charge of all matters pertaining to labor relations with the carrier.

Section 3 (a) of the constitution, provides:

"The G. I. D. (Triennial Convention) shall have exclusive jurisdiction over all subjects pertaining to the Brotherhood, and its financial activities, and its enactments and decisions upon all questions shall be the supreme law of the Brotherhood and all Divisions, and members of the Organization shall render true obedience thereto."

Section 49 of the statutes, page 59, provides:

"Should any member feel that any injustice has been done him by any decision of his Division, he may appeal to the Grand Chief Engineer, making a written statement of his case, and file copy of same with the Division, except cases of seniority, rights to runs, or distribution of territory which belong to the General Chairman and General Committee of Adjustment, or the General Chairman, who is the Committee between meetings, and upon receiving such statement the Grand Chief Engineer shall procure a written statement from the Division, and, after duly considering

each, and the facts and evidence as well as the law, render his decision, such decision to be final and is to be complied with unless reversed by the next G. I. D. Convention.''

Section 36 (a) of the standing rules, page 103, provides:

''The right to make and interpret contracts, rules, rates and working conditions for Locomotive Engineers shall be vested in the regularly constituted Committees of the B. of L. E.''

Section 34 (b) of the standing rules, page 101, provides:

''The General Committee of Adjustment shall have full power to settle all questions of seniority and rights to runs and jurisdiction of territory that are presented to them, and their decision shall be final unless, on an appeal to the membership, their decision is repealed by a majority vote.''

Section 27, standing rules, page 99, provides:

''Any action taken by a General Chairman or a General Committee of Adjustment on any system shall stand as law for all members and Divisions on said system until repealed by the General Committee, or in accordance with provision for appeals in Section 28 Standing Rules. . . .''

Section 28, standing rules, page 99, provides:

''An appeal may be taken from the decision of the General Committee of Adjustment or the Chairman to the members of the system, if made within ninety (90) days from the date of such decision, and a majority vote of members on said system shall be final; this vote to be taken in the same manner as in the election of Division officers. Such appeal may be taken by any member in good standing who may feel himself aggrieved, by making a full statement of his case, accompanied by a statement of the General Committee of Adjustment signed by the General Chairman and

Secretary, and it shall be the duty of the proper officers of the Division to place the seal upon it and transmit it to the Divisions on the system and the Division must take the vote within thirty (30) days from receipt of notice of appeal.''

The schedule referred to in this cause is the 1928 schedule of regulations and rates of pay for the government of engineers in road and yard service on the Pennsylvania Railroad, which bears the signatures of the three general managers of the Pennsylvania Railroad and the three general chairman of the B. of L. E. The schedule was negotiated by representatives of the general committee of adjustment of the B. of L. E. and representatives of the management.

It further appears from the evidence that on September 6, 1929, at a regular meeting of Division 231 of the Brotherhood, a resolution was adopted to consolidate the Pan Handle and Ft. Wayne seniority rosters, which reads in part as follows:

''Be it resolved by the action of Div. 231 to consolidate the P. C. C. & St. L. Roster with the P. F. W. & C. Roster a plan drawn up whereby the oldest man on the P. F. W. & C. R. R. would follow the youngest promoted man in 1918 on the P. C. C. & St. L. Roster and the oldest P. C. C. & St. L. engineer would follow A. J. Scott on the P. F. W. & C. Roster and all men promoted underneath that would be dovetailed in from the date of hire.''

The merger matter was sent to the general committee of adjustment of the Brotherhood on the Pennsylvania Lines West of Pittsburgh, and accepted by the general chairman on September 20, 1929. The executive committee of the general committee of adjustment met in Columbus on March 3 and 4, 1930, and considered the merger on the Chicago Terminal Division. After listening to the respective arguments, the executive committee decided to hold the merger matter in

abeyance until the next triennial meeting of the committee scheduled for October, 1930. On April 4, 1930, at a regular meeting of Division 231, plaintiff Kingsbury made the following motion:

"I make a motion that we *withdraw* the merger resolution adopted by the lodge."

The Brotherhood met in convention during the summer of 1930 and enacted section 34 (c) to the standing rules providing for a two-thirds vote of members affected before a merger of seniority districts could be effected. The question then arose as to whether or not the section applied to a merger matter already in the hands of and accepted by a general committee. Grand chief Johnston was consulted and ruled that section 34 (c) was not retroactive and that the merger on the Chicago Terminal Division did not require a vote of the two seniority districts involved because the case had been submitted to the general committee prior to the enactment of the section.

The regular triennial meeting of the general committee was held in Columbus in the month of October, 1930. Plaintiff Dring appeared before the subcommittee and was given full and complete opportunity to make a fair presentation of the Ft. Wayne side of the merger controversy. A dovetail merger was approved by the general committee by a vote of 22 to 3, the defendant Binschip not voting. On November 10, 1930, local chairman Binschip, acting under the instructions of general chairman Enders, entered into an agreement with the superintendent effective December 1, 1930, by which the Ft. Wayne and Pan Handle seniority rosters on the Chicago Terminal Division were consolidated, all engineers on the consolidated roster to rank thereon as of the date of employment. The form of merger adopted is set forth as the "dovetail merger."

Appeals were taken to the convention of the Brotherhood of Local Engineers, where a prior decision of the

chief engineer's ruling that the merger be sustained, was submitted and approved. These appeals were taken under the Brotherhood law and approved by the highest tribunal to which an appeal could be taken.

One of the controlling questions in this case is whether or not any contract right of the plaintiff was violated by the dovetail merger of the Ft. Wayne and the Pan Handle seniority rosters. The agreement of November 10, 1930, between the representatives of the Brotherhood of Local Engineers and the Pennsylvania Railroad Company was entered into by which the Ft. Wayne and Pan Handle seniority rosters on the Chicago Terminal Division were consolidated and provided that all engineers on the consolidated roster would rank thereon as of date of hire. The trial court found as claimed by plaintiff that the agreement violated the contract right of the plaintiff under regulation 3–D–1, one of the seniority regulations of the schedule, which provides that in the event of a merger of two or more divisions, the seniority of the engineers then in service would be confined to the original territory on which they may have earned it, said engineers, however, to have seniority on the combined division over those engineers promoted or hired after the date of the merger, which said regulation provides that it shall also apply to the merging of seniority districts.

· We are inclined to believe that the parties to the schedule, the general committee of adjustment and the railroad, by regulation 7–B–1 thereof, reserved to the general committee the authority to adjust with the management rights of the engineers of the Chicago Terminal Division by the dovetail merger of the Ft. Wayne and Pan Handle seniority rosters. Regulation 7–B–1 reads as follows:

"The Engineers' Committee will represent the engineers in all matters pertaining to rates, regulations and general grievances."

If that contention were not true and the language above quoted did not govern the engineers or representatives and they would not be bound by it, then how little use there would have been in forming this committee of adjustment.

In *Bergstein v. Popkin,* 202 Wis. 625, it was said at 632:

"So far as we are aware, it has never been held that a third party for whose benefit a contract was made had any greater or more extensive right than existed by the terms of the contract, and it has been almost universally held that, if the original parties to the contract reserve by the terms of the contract the right to modify it or abrogate it, such a reservation is valid and enforceable."

In *Gabby v. Roberts,* 237 Ky. 230, the question was raised as to what authority was conferred by a letter written by a principal to his agent, which read:

"I hereby authorize you to represent me at the Hugh French sale on September 17th, or whenever it is." When the property was offered for sale, the agent bid the property in in his principal's name and executed a bond for the purchase price. Suit was instituted on the bond. The court held that the principal was bound on the bond, saying:

"'To represent', in its ordinary usage, must be understood to mean 'as standing in the place, or supplying the place, or performing the duties, or exercising the rights, of the party represented; to speak or act with authority on behalf of another.' Webster's New International Dictionary. The legal definition is the same. 34 Cyc. 1619. The authority conferred upon Travis was a very broad one, and we have no doubt that it was intended to, and did, vest in him, the right and power to bid upon the property and to execute the bonds therefor, when he became the successful bidder."

In *State ex rel. O'Connor v. McCarthy,* 86 Mont. 100, 282 Pac. 1045, it was stated:

". . . To 'represent' another in court means to conduct and control the proceedings 'on behalf of' that other (*Carpenter v. Superior Court,* 75 Cal. 596, 19 Pac. 174); to stand in the place of and act for the one represented (*Plummer v. Brown,* 64 Cal. 429, 1 P. 703; *Chase v. Swayne,* 88 Tex. 218, 30 S. W. 1049; 53 Am. St. Rep. 742)."

In *National Furnace Co. v. Keystone Mfg. Co.,* 110 Ill. 427, the Supreme Court defined the term "general agent" as "one authorized to transact all of his principal's business, or all of his business of some particular kind." *Halladay v. Underwood,* 90 Ill. App. 130; *Crain v. First Nat. Bank,* 114 Ill. 516.

We believe this reservation of authority was binding upon the beneficiary to this contract and that the committee had full authority to represent them.

In *Donovan v. Travers,* 285 Mass. 167, which was a suit in equity, which sought an interpretation of an agreement between the Railroad and the Brotherhood. The defendants were the Railroad and members of the grievance committee of the Brotherhood of Railroad Trainmen. Under the schedule, grievances between the employees and the railroad were to be referred to and adjusted by the grievance committee. The court in that case said:

". . . The substantial issue is whether the rights of the plaintiffs are fixed by the terms of the agreement between the Union and the railroad corporation as it stood when the several plaintiffs entered upon their service interpreted only in the light then available, or whether as the agreements changed from time to time, the modifications and possible changes in interpretation of terms *agreed* upon by the Union and the railroad corporation modified and affected the individual contracts of those already in the corporation

employ. We think the latter to be the proper position. The transaction is an agreement between an employer and a labor union designed by the latter to benefit itself and those members who enter the employer's service. *The employee stands no higher than the union. If it modifies the agreement with the employer, the employee must acquiesce. In no correct sense is the union an agent. It is a principal.*"

It seems to us that where a labor union, composed of employees of a company, whether the objector is a principal or an employee of a certain company, where the rights of the employees are in the hands of the union for the purpose of settling disputes or adjustments of their rights, or have under consideration collective bargaining of any kind, that when an agreement is made, no fraud having been shown, it is to be presumed that they have had a fair hearing before their union committees and presented their side. Under these circumstances the employees would be bound by the actions of the officers of their union.

In the case of *Engel v. Walsh,* 258 Ill. 98, the court said in part:

"In churches, lodges, labor unions, and other like voluntary associations, each person on becoming a member, either by express stipulation or by implication agrees to abide by all rules and regulations adopted by the organization. . . . Courts will not interfere to control the enforcement of by-laws of such associations, but they will be left free to enforce their own rules and regulations by such means and with such penalties as they may see proper to adopt for their government."

In *Gonzales v. Roman Catholic Archbishop of Manila,* 280 U. S. 1, it was said: "In the absence of fraud, collusion, or arbitrariness, the decisions of the proper Church tribunals on matters purely ecclesiastical, although affecting civil rights, are accepted in

litigation before the secular courts as conclusive, because the parties in interest made them so by contract or otherwise. Under like circumstances, effect is given in the courts to the determination of the judicatory bodies established by clubs and civil associations.''

In the instant case exceptions were taken to the charges of fraud as contained in the master's report, which exceptions were sustained by the court. Therefore, it seems to us that a mere difference of opinion between two contending bodies of men is the main contention. The body of men connected with the railroad companies who have the authority to decide such matters as have been presented here, have done so and their decision is controlling as to all.

In Oakes, Organized Labor & Industrial Conflicts, sec. 61, 65, it was said:

"The law relating to labor unions in relation to interference by the courts as to membership and the enforcement of rules is the same as that applied to other voluntary organizations. By uniting with the union the member assents to and accepts the constitution and impliedly binds himself to abide by the decisions of such boards as that instrument provides for the determination of the disputes arising within the association." . . .

See also *George T. Ross Lodge No. 831 v. Brotherhood of Railroad Trainmen,* 191 Minn. 373; *Long v. Baltimore & Ohio Railroad,* 155 Md. 265; *Simpson v. Grand International Brotherhood of Locomotive Engineers,* 83 W. Va. 355.

An injunctional order must be complete in detail as to its prohibition or direction so that what the court intends is easily discernible. In the instant case the language used in the injunctional order, namely, "take such steps as shall be necessary to reinstate said original separate and independent Fort Wayne and Pan Handle seniority districts and rosters," is not clear

and definite as to what should be done by the defend-
ant in order to comply with the court's directions or
prohibition.

Other points are raised but we do not think it neces-
sary to pass on them at this time.

We are of the opinion that the parties, as plaintiffs,
were bound by the action of their committees. They
had a full, fair hearing. No fraud intervened and we
believe they are bound by the actions of the committee
of their union whose action was reviewed by the high-
est tribunal of their organization which was created
by them to review and adjust these differences.

For the reasons herein given the decree is reversed
and the cause is remanded with directions to dismiss
the bill of complaint for want of equity.

*Decree reversed and cause remanded with directions.*
HEBEL, J., concurs, and BURKE, J., takes no part.