JAMES G. SCHWARTZ ET AL., Petitioners, *v.* DISTRICT COURT OF PUERTO RICO, SAN JUAN SECTION, HON. R. RAMÍREZ PABÓN, JUDGE, Respondent; THE FIRST NATIONAL BANK OF MIAMI, FLA., ETC., Intervener.

No. 1939. Argued September 8, 1952.—Decided October 3, 1952.

*James R. Beverley* and *Francisco Castro Amy* for petitioners. *Charles R. Hartzell, Rafael O. Fernández* and *Daniel F. Kelley, Jr.*, for intervener.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The petitioners herein filed in the former District Court of Puerto Rico, San Juan Section, a complaint against the First National Bank of Miami, Miami, Florida, for the liquidation and partition of community property. It was alleged therein that the aforesaid corporate entity, domiciled in Florida, was instituted the sole and universal heir under William A. Hutton's will, in its capacity as "beneficiary" (trustee) for the benefit of Mrs. Vera Bryce during her lifetime, and that upon the latter's death, the perfect ownership would pass to several charitable institutions. The plaintiffs allege that Elizabeth N. Schwartz, their predecessor, was Hutton's wife and that, upon their death, they left community property consisting, in part, in a farm located in Puerto Rico, money deposited in banks in Puerto Rico and Florida, and two U. S. savings bonds in Florida, which properties were left to the defendant in the will. The complaint prays for the partition and division of said community property.

After an order to secure the effectiveness of the judgment as to such properties was entered, the summons and the complaint were served on Mr. Herbert S. McConnell, attorney-at-law, as the defendant's alleged agent. Upon motion filed to that effect, the aforesaid Court of San Juan entered an order decreeing the invalidity of the service. Said order is challenged in this petition for certiorari.

On December 3, 1949, a qualified officer of The First National Bank of Miami, Miami, Florida, subscribed a Power of Attorney in favor of Herbert S. McConnell, domiciled in San Juan, Puerto Rico, which textually copied reads thus:

## "POWER OF ATTORNEY

"KNOW ALL MEN BY THESE PRESENTS that the undersigned, THE FIRST NATIONAL BANK OF MIAMI, MIAMI, FLORIDA, a corporation with its principal place of business in the City of Miami, County of Dade, and State of Florida, does hereby appoint Herbert S. McConnell, of the City of San Juan, Puerto Rico, its attorney for it and in its name and stead to do all things, execute all documents and take every manner of action pertaining to or in connection with the estate, property or affairs of WILLIAM ARTHUR HUTTON, who died on or about November 30, 1949, in Dorado, Puerto Rico, including (without limiting the generality of the foregoing) the power to collect, receipt for, make claim for or sue for any distributive share, legacy, bequest, or claim, of any kind, nature or description, which it may have against or may now or at any future date be entitled to from the estate of the said William Arthur Hutton, deceased, including any distributive share, legacy, bequest, or claim of any kind, nature or description, which it may have against or may now or at any future date be entitled to from said estate as a trustee for the benefit of any other person; the power to apply to or petition any court or the judge or judges of any court in Puerto Rico for the appointment of an administrator, executor, curator, trustee or other personal representative of the estate of said William Arthur Hutton, deceased; the power to accept or consent to the appointment as such administrator, executor, curator, trustee or other personal representative of the said estate of any person or corporation, including the power to accept such appointment himself in his own name, and to act as such personal representative in his own name; the power to employ counsel and to act as counsel himself; the power to pay taxes, settle or compromise tax claims, appear or represent it before any tax authority, or take any action or sign any document relating to any tax liability which arises or may arise under the laws of the United States of America or of Puerto Rico; hereby revoking all former powers of attorney or authorization whatever in the premises.

"Giving and granting unto its said attorney full power and authority to do and perform all and every act and thing whatsoever, requisite, necessary or proper to be done in and about the premises, as fully, to all intents and purposes, as it might or could do if personally present, giving and granting unto its

said attorney full power and authority to substitute and appoint from time to time any attorney or attorneys under him, the said attorney, with the same or more limited powers, and such substitute or substitutes at pleasure to remove and another or others to appoint, hereby ratifying and confirming all that its said attorney, or his substitute or substitutes, shall lawfully do, or cause to be done by virtue hereof.

"IN WITNESS WHEREOF, the said corporation has caused their presents to be signed in its name by its proper officer, and its corporate seal to be affixed, attested by its Assistant Cashier, who is duly qualified and authorized to do so, this third day of December, 1949, at Miami, County of Dade, and State of Florida, in the United States of America.

*The First National Bank of Miami,*
Miami, Florida
By (*signed*) *R. D. Rodabaugh*
Trust Officer
Attest: (*signed*) *T. J. Trout*
Assistant Cashier.

In the presence of:
(sigd) *C. W. MacFarlane*
(sigd) *H. M. Harvey.*" [1]

On December 19, 1949, McConnell, represented by another attorney, filed in the District Court, Bayamón Section, a petition requesting that he (McConnell) be appointed Ancillary Administrator of the inheritance estate of the late William A. Hutton. McConnell explained that he requested the appointment in his capacity as attorney in fact of the First National Bank of Miami, Florida, so that he could act in Puerto Rico as an assistant of that corporation, which had been designated by a court of Florida as administrator of Hutton's estate. The District Court of Bayamón designated McConnell permanent Judicial Administrator of the estate, upon furnishing the proper bond. He was ordered to take whatever steps were necessary in connection with the partition of the inheritance.

---

[1] In the Spanish version of this opinion, the English text of the above-copied Power of Attorney is inserted as footnote 1.

■ Since the defendant and intervener herein is a foreign corporation, in order that the courts of Puerto Rico may have effective jurisdiction over it, two requisites must be fulfilled, to wit, that the said corporation has done business in Puerto Rico and that it has consented to the exercise of such jurisdiction by our courts. Restatement of the Law of Conflict of Laws, § 89; Moore's Federal Practice, Vol. 2, p. 969, 2d ed.; *Stetson China Co.* v. *D. C. Andrews & Co.*, 9 Federal Rules Decisions 135 and *Jacobowitz* v. *Thomson*, 141 F. 2d 72. To render judgment against a foreign corporation without fulfilling those requisites would be tantamount to condemning it without a hearing, in violation of due process. It would be contrary to the constitutional due process clause to render a judgment against a corporation organized under the laws of another state, where such corporation does not do business in the jurisdiction where the judgment is rendered or has no property therein or has no qualified agent therein upon whom process and the complaint may be served. *Riverside Mills* v. *Menefee*, 237 U. S. 189; *Bagdon* v. *Phil. & Reading C. & I. Co.* 217 N. Y. 432.

■■ Let us consider, in the first place, whether from the documents contained in the record, assuming that the facts therein stated are true, it appears that the intervener-defendant, the First National Bank of Miami, was doing business in Puerto Rico when process was served on McConnell. We must determine the rule applicable to the factual situation here. Originally, the Supreme Court of the United States, in *Bank of Augusta* v. *Earle*, 38 U. S. 519, 588, had indicated, as a dictum, that a corporation could not migrate to another jurisdiction, since it "can have no legal existence out of the boundaries of the sovereignty by which it is created." From this it was inferred that a foreign corporation could never be sued in a state other than the one of its domicile by incorporation.[2]

---

[2] It has been suggested that the source of this pronouncement was the mistaken impression, formed at the beginning of the development of

The Supreme Court of the United States itself subsequently repudiated this concept, realizing that actually corporations carry on their businesses outside the state of their creation through agents. *St. Clair* v. *Cox*, 106 U. S. 350. Nevertheless, courts began to create two legal fictions to justify the exercise of jurisdiction over foreign corporations, one, of implied consent, to the effect that in doing business within a state, the corporation implicitly consented to its being subjected to the jurisdiction of the courts of the territory where business was being done, and the other, of the corporate "presence," predicated on the theory that the corporation was present wherever its agents were promoting corporate ends.[3] Under those doctrines, courts indicated that a foreign corporation did business within a state if its activities, throughout its agents, were continuous and systematic. *St. Clair* v. *Cox, supra; Connecticut Mutual Life Ins. Co.* v. *Spratley*, 172 U. S. 602; *International Harvester Co.* v. *Kentucky*, 234 U. S. 579; 34 Calif. L. Rev. 331, 334 and 2 Moore's Federal Practice 971, 2d ed.

Finally, the Supreme Court of the United States has adopted a new test to define what constitutes "doing business" by a foreign corporation for the purposes of the constitutional exercise of jurisdiction over such entities. In *International Shoe Co.* v. *Washington*, 326 U. S. 310, salesmen employed by a Delaware corporation, having its principal place of business in Missouri, displayed articles and solicited orders from prospective buyers in the State of Washington. The corporation rented offices and rooms in Washington, for exhibiting the articles, and paid the rentals. The opinion delivered by Chief Justice Stone recites, in part, at page 316:

---

the law of private corporations, to the effect that all corporate entities were analogous to municipal corporations. 30 Harv. L. Rev. 686.

[3] Both theories have been criticized and challenged because they are technicalities not corresponding to reality and because they failed to cover all the situations of corporate actions. See 30 Harv. L. Rev. 676; 32 Harv. L. Rev. 871; 29 Col. L. Rev. 187, 188 and 46 Mich. L. Rev. 1130.

"Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer* v. *Neff*, 95 U. S. 714, 733. . . .

"Since the corporate personality is a fiction, although a fiction intended to be acted upon as though it were a fact, . . . it is clear that unlike an individual its 'presence' without, as well as within, the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it. To say that the corporation is so far 'present' there as to satisfy due process requirements, . . . is to beg the question to be decided. For the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which courts will deem to be sufficient to satisfy the demands of due process. . . . Those demands may be met by such contacts of the corporation with the state of the forum as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there. An 'estimate of the inconveniences' which would result to the corporation from a trial away from its 'home' . . . is relevant in this connection. . . .

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not . . . whether the activity, which the corporation has seen fit to procure . . . is a little more or a little less. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. . . .

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obliga-

tions arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue . . ."

In short, the Supreme Court of the United States does not establish a fixed and rigidly defined rule.[4] In accordance with the circumstances of each case, if it is just and reasonable that a foreign corporation be subjected to the jurisdiction of a State, either because that corporation has enjoyed the protection of the laws of the State or because it has had sufficient contacts with the State to justify such submission and in the balance of convenience it is fairer that the case be heard in the territory where certain corporate activities have been carried on, then, from the point of view of substantial justice and of reasonableness, it must be understood that the corporate has been doing business within the State. It is possible that the facts involved in the *International Shoe Co.*, case imply continuous and systematic activities within the State of Washington, but the general test enunciated by the court covers cases where the corporate activities do not have such characteristics of continuity and permanence.

---

[4] For that reason, the opinion delivered in *International Shoe Co.* v. *Washington, supra,* is criticized in 34 Calif. L. Rev. 331, 336. That might be the defect, but it is also the virtue, of every realistic concept of laws. Legal theories have no authentic meaning if divorced from their vital contends as to concrete realities. Incidentally, the doctrine of the *International Shoe Co.* case was liberally applied later in *Nippert* v. *City of Richmond,* 327 U. S. 416, 162 A.L.R. 844 and in *Kilpatrick* v. *Texas Pacific Ry. Co.,* 166 F. 2d 788, opinion delivered by Judge Learned Hand, who had already anticipated that doctrine in *Hutchinson* v. *Chase & Gilbert,* 45 F. 2d 139, 141, which was cited with approval in the *International Shoe Co.,* case. Both in the *Nippert* and in the *Milpatrick* cases it is held that soliciting orders constitutes doing business, which pronouncement is contrary to that expressed in previous cases. See 2 Moore's Federal Practice 2d ed., 1950, Supp. p. 59. *United States* v. *Scophony Corp.,* 333 U. S. 795, 807, 808, ratified the doctrine of the *International Shoe Co.,* case, *supra,* and adopted "the practical and broader business conception" of doing business through "substantial business operations," which test substitutes the "hair-splitting . . . technicalities" that permitted the corporation to act and then retreat.

Applying that test to the facts of the instant case, it appears from the Power of Attorney executed in favor of McConnell that the defendant corporation, intervener herein, authorized McConnell to engage in multiple activities in connection with William A. Hutton's estate, which were to be considered as the corporation's own actions. He is authorized to perform any acts necessary in connection with the estate including ("without limiting the generality of the foregoing") to collect, make claim for or sue for any share or claim in the estate; to petition our courts for the appointment of an administrator of the estate, to employ or utilize counsel or to act as counsel himself; to pay taxes or to appear and represent the corporation before any governmental authority in connection with taxes or to take any action relating to tax liability. The Power of Attorney recites that McConnell is fully authorized to do everything necessary and proper to all intents, as the corporation might or could do if personally present. As a matter of fact, McConnell prayed the court of Bayamón to designate him Ancillary Administrator, to serve as an assistant of the corporation, which had already been designated permanent Administrator in Florida. The Court of Bayamón designated McConnell permanent Judicial Administrator in Puerto Rico.

All the foregoing acts establish that the intervener corporation has been doing business in Puerto Rico. It has had sufficient contacts and ties with our jurisdiction to render reasonable its submission to our courts. Not only has it received the protection of our laws, but it has also invoked them affirmatively. It performs acts of administration with regard to properties located in Puerto Rico and receives rentals from those properties, to be delivered to the trust beneficiary. In the balance of conveniences, it is not unfair to oblige it to defend itself in our courts, especially in view of the fact that it receives financial benefits as the result of her activities in Puerto Rico, under the protection of our

laws. The enjoyment of financial benefits must be a showing of its amenability to suit in our courts.[5]

We need not cite the innumerable cases deciding the question whether a corporation has been doing business in a foreign jurisdiction. Each case must be determined in accordance with its own facts and circumstances. *People* v. *South Porto Rico Sugar Company*, 56 P.R.R. 633, 636. In addition, the foregoing decisions must be considered in the light of the new tests established in *International Shoe Co.* v. *Washington, supra.*[6] Anyway, the comments set forth in Restatement of the Law of Conflict of Laws are applicable hereto. Section 167 thereof defines what constitutes doing business, as follows:

"Doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, or otherwise accomplishing an object, or doing a single act for such purpose with the intention of thereby initiating a series of such acts."

To illustrate the application of that rule, an example substantially identical with the case at bar is given at page 246. It reads:

"8. A owns a tract of land in state X. B is a trust company incorporated in state Y. A dies having made B executor and trustee under his will. B, in accepting the trust and making

---

[5] Naturally, we do not anticipate an opinion as to the merits of any judicial controversy in which the corporation may be involved. We merely hold that it is doing business in Puerto Rico and that, therefore, it may be sued in our courts.

[6] In Puerto Rico, *People* v. *Central Aguirre Associates*, 63 P.R.R. 534, held that the defendant did business here through Luce & Co., *S. en C.*, a subsidiary and agent it controlled and that, therefore, it was present in the Island, service of process upon Marcelo Obén, managing partner of Luce & Co., being valid. See also *People* v. *South Porto Rico Sugar Company, supra. Central Eureka, Inc.* v. *Gallardo*, 42 P.R.R. 617, held that even though a foreign banking corporation does not comply with the local statutory requirements for doing business in the Island, if it actually has here a place of business, office, or agent to whom interest is paid on loans made locally, it does business here through an agent. In *Mutual Rice Co. Inc.* v. *Truyol*, 52 P.R.R. 7, a foreign corporation that made individual contracts by mail did not do business here. *Caguas Co.*,

proper distribution of the real estate, is doing business in X, even though B is trustee of no other property in X."

■ It must be noted, furthermore, that the questions regarding the validity and the administration of a trust of land must be determined by the law of the jurisdiction where the land is located, namely, by the laws of Puerto Rico in the instant case. Restatement of the Law of Conflict of Laws, § § 241 and 243; Land, Trusts in the Conflict of Laws, pp. 258, 263, 264; *Knox* v. *Jones*, 47 N. Y. 389; Matter of Osborn, 151 Misc. 52, 270 N. Y. Supp. 616 and *Swetland* v. *Swetland*, 149 Atl. 50, 153 Atl. 907. It implies the necessity of applying our laws and makes our courts the most convenient forum.

■ We shall determine whether the summons issued here was duly served on Herbert S. McConnell, as an agent of the defendant-intervener. This issue must be decided pursuant to the provisions of subdivision (*d*) (4) of Rule 4 of our Rules of Civil Procedure, which provides:

". . . Service shall be made . . .
"       .       .       .       .       .       .       .

"(4) Upon a domestic or foreign corporation or upon a company, partnership, or other unincorporated association which is subject to suit under a common name, by delivering

_____

*Inc.* v. *Mombille*, 58 P.R.R. 301, holds that the fact that a foreign corporation is the holder by endorsement of some promissory notes executed and payable in the Island, does not constitute of itself doing business in the Island. *Isabella Grove Inc.* v. *Registrar*, 24 P.R.R. 240, holds that to acquire and hold real property does not imply that a foreign corporation does business in Puerto Rico. It merely accepted a deed in connection with real property, and even if it gave a mortgage, it would not be doing business here. *Union Central Life Ins. Co.* v. *Gromer*, 19 P.R.R. 856, holds that making loans secured by mortgage is not to engage in business.

It need not be discussed what would be the effect of applying the tests established in the case of *International Shoe Co.* v. *Washington*, *supra*, as to the efficacy of those decisions, since the facts involved in this case are different. But we must point out that in *Isabella Grove Inc.* v. *Registrar*, *supra*, and *Union Central Life Ins. Co.* v. *Gromer*, *supra*, the entities in question received financial benefits originating on properties located here, under the protection of our laws.

a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." [7]

Compliance with any of the three requirements listed below would imply the validity of the service, that is:

(1) That McConnell were an agent authorized by appointment to receive service of process.

(2) That he were a general agent of the defendant corporation.

(3) That he were a managing agent of the corporation.

As to the authorization by appointment, the appointment must be an actual appointment, namely, the designation must refer to the agent's authority to receive service of process on behalf of the corporation. 2 Moore's Federal Practice 959, § 4.22, 2d ed.; *Szabo* v. *Keeshin Motor Express Co. Inc.*, 14 Fed. Rules Serv. 4d 131, case 1, 10 F.R.D. 275 and *Fleming* v. *Malouf*, 10 Fed. Rules Serv. 4d 13, case 1, 7 F.R.D. 56.[8] The document containing such actual appointment need not provide specifically and exactly that the agent is authorized to receive service of process on behalf of the corporation. The agent must be appointed in words rationally interpreted as indicating that he has that authority, inasmuch as when a power is actually conferred in a document, the executing party takes the risk of the reasonable interpretation that may be put upon it by the courts. *Penna. Fire Ins. Co.* v. *Gold Issue Mining Co.*, 243 U. S. 93, 95, 96,

---

[7] Rule 4(d)(3) of the Federal Rules of Civil Procedure is substantially identical with ours, with an exception not applicable thereto.

[8] Possibly the inclusion in the Rules of Civil Procedure of the requirement of the actual appointment of an agent in order to receive service of process is based on the test formerly established by the courts to the effect that, as to causes of action arising outside of a jurisdiction as to a corporation not doing business within that jurisdiction, the only way of serving process on that corporation is by making service on an agent actually designated to receive service of process. *Penna. Fire Ins. Co.* v. *Gold Issue Mining Co., infra,* and *Bagdon* v. *Phil. & Reading C. & I. Co., supra.*

opinion delivered by Judge Holmes. The Law has progressed beyond the stage of the adoration of words and subordinates what is formal to what is substantial. In speaking of an agent authorized by appointment, Rule 4(d)(4) does not establish rigid categories which might bring about an ankylosis to judicial construction.

The Power of Attorney executed in favor of McConnell authorizes him to perform every act, execute all documents and take every manner of action necessary in connection with William A. Hutton's estate, to all intents and purposes. It goes on to provide that his specific powers to make claims and apply to any court in Puerto Rico does not limit the generality of his authority and it further provides that McConnell substitutes the corporation as if the latter were present.

This deed of Power of Attorney may be rationally construed as creating an actual or real authority in favor of McConnell to receive service on behalf of the corporation. At any rate, under Rule 4(d)(4) of the Rules of Civil Procedure, service is valid if made on a managing agent or, in the alternative, on a general agent of the foreign corporation. A general agent is different from a managing agent and, as to the latter, the requirements are more stringent, but valid service may be made on either class of agent. *Jacobowitz* v. *Thomson, supra,* opinion delivered by Judge Clark. *Swarts* v. *Christie Grain & Stock Co.,* 166 Fed. 338, 342, also establishes the difference between a managing and a general agent since the former controls, directs, or supervises a corporate business and the latter has a more generally representative status. A general agent is one authorized to conduct a series of transactions involving a continuity of service. Restatement of the Law of Agency, § 3(1). The power to exercise an independent judgment is a factor to be considered, but it is not essential if there is continuity of service. See *Todd Shipyards Corporation* v.

*The City of Athens*, 83 F. Supp. 67, 88 and *Hackney* v. *Fairbanks, Morse & Co.*, 143 S. W. 2d 457. The general agent is an agent having broad and general powers, *Carver* v. *Preferred Accident Ins. Co.*, 256 N. W. 274, or authorized to transact all of his principal's business of some particular kind or at a particular place, and authorized to act on behalf of his principal in all matters included within the ordinary course or nature of his principal's business. *Warren Webster & Co.* v. *Zac Smith Stationery Co.*, 130 So. 545; *Federal Surety Co.* v. *White*, 295 Pac. 281; *Great American Casualty Co.* v. *Eichelberger*, 37 S. W. 2d 1050; *Bank of Ferguson* v. *Blick*, 115 S. W. 2d 27; *Evans* v. *Johnston*, 20 N. E. 2d 841, 847 and Words and Phrases, Vol. 18, p. 117, permanent edition. The agent's authority need not extend over the whole business of the principal, (*Hackney* v. *Fairbanks, Morse & Co., supra*), nor need the agent be an officer of the corporation. *Vardeman* v. *Penn Mut. Life Ins. Co.*, 54 S. E. 66.

The Power of Attorney executed in favor of McConnell implies that he is a general agent, pursuant to the foregoing general definitions. His powers are very broad and general and he practically substitutes and occupies the same position as the corporation insofar as the latter's business in Puerto Rico is concerned, as to Hutton's inheritance. It appears from said Power of Attorney that McConnell is authorized to transact a continuous series of activities in connection with that inheritance.

In *United States* v. *Scophony Corp., supra*, a foreign corporation executed, as here, a General Power of Attorney in favor of William Elcock, authorizing him to act and "bind the Company in all or any matters affecting the Company's interests in the United States." He was authorized to institute and prosecute all proceedings necessary to conserve Scophony's interests; to defend or compromise any suits brought against Scophony; to settle accounts; to engage or

dismiss subagents; to borrow money; to dispose of any and all of Scophony's property and interests in the United States and "generally to represent the Company in the United States of America in all matters in any way affecting or pertaining to the Company." The Supreme Court of the United States held that service of process on Elcock in connection with a complaint filed against the company was valid.

In *Boston Medical Supply Co.* v. *Lea & Febiger*, 195 F. 2d 853 (First Circuit, opinion delivered by Judge Magruder), a foreign corporation engaged in book printing was sued and certain sellers of its books, domiciled in Massachusetts, were served with process in Massachusetts. They had authority only to sell the books under terms previously specified by the foreign corporation. It was held that although they might have been agents under the Massachusetts substantive law, they were not general agents under Rule 4 of the Federal Rules of Civil Procedure. We consider that said case is different from the case at bar. No power of attorney whatsoever conferring a general representation was executed, and the salesmen could not exercise independent judgment and discretion. McConnell's authority in this case is broader than the authority of the presumed agents in the *Boston Medical Supply Co.* case. Furthermore, in the case last mentioned, the salesmen had an independent business. 98 F. Supp. 13, as to the same case. The opinion of the Circuit Court cites *Diamond* v. *New York S. & W. R. Co.*, 18 F. Supp. 605, wherein it was held that an agent of several railroad companies who distributed tickets was not a managing agent under the Civil Practice Act of the State of New York. The question whether the person served was a general agent was not involved. The presumed agent was not subject to the orders of the entity, he had no power to make contracts, he could not engage or discharge employees on behalf of the company, he could not purchase equipment or rent offices. It was said that the presumed agent had less

authority than a clerk in a store. Therefore, the latter case is clearly distinguishable. In the other case cited by the Circuit Court in *Boston Medical Supply Co., supra,* to wit; *United States* v. *Nidera Uruguaya,* 8 F.R.D. 462, a mere commission agent or broker was involved.

In *Neset* v. *Christensen,* 92 F. Supp. 78, it was held that the master of a vessel who, during calls at New York, purchased equipment for his company, was a managing agent. *Waider* v. *Chicago R. I. & P. Ry. Co.,* 10 F.R.D. 263, 265, involved the service of a summons and it was held that an agent is one who has authority to create, modify, affect, and terminate contractual obligations between his principal and third persons. McConnell meets those requirements.

*De la Rosa* v. *Puerto Rico Motors,* 58 P.R.R. 342, 346, holds that certain automobile dealers who acted independently, under their own name, paid office expenses and employees, received a 50 per cent commission and accepted on deposit (*a consignación*) parts and accessories, were agents, as contemplated by § 78 of the Code of Civil Procedure, which provides in part, that a corporation may be sued in any district where it has an agent. It is stated that an agent is one who "undertakes to transact some business or manage some affairs on account of such other, and to render an account of it."

In *Saurí et al.* v. *Wollard et al.,* 36 P.R.R. 595, a Mr. Quesada was a selling agent (commission agent or broker). It was held that Quesada had no authority to receive service of process on behalf of a purchaser to whom he had communicated an offer of sale. That case is different from the instant case.

The order appealed from will be set aside and the case remanded for further proceedings not inconsistent with this opinion.

Mr. Chief Justice Todd, Jr., did not participate herein.

Mr. Justice Sifre concurs in the result.